Gabriel Z. Doble (Cal. Bar No. 335335)
gabe@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Gregory S. Dovel (Cal. Bar No. 135387)
greg@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Julien A. Adams (Cal. Bar No. 156135)
julien@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs Michael Owens,*
*Jennie Plumley, Jon Schweitzer,*
*Charlie Finlay, Melissa Irelan,*
*and the putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL OWENS, JENNIE PLUMLEY, JON SCHWEITZER, CHARLIE FINLAY, AND MELISSA IRELAN, individually and on behalf of all others similarly situated, *Plaintiffs*, <br><br> v. <br><br> ZYNGA INC., a Delaware Corporation, <br><br> *Defendant*. | Case No. 3:21-cv-01427-LB <br><br> FIRST AMENDED CLASS ACTION COMPLAINT <br><br> DEMAND FOR JURY TRIAL |

## Table of Contents

Introduction ......................................................................................................................... 1

Parties ................................................................................................................................. 2

Jurisdiction and Venue ....................................................................................................... 2

Common Allegations .......................................................................................................... 3

    A.    Zynga unlawfully develops, owns, and operates the Zynga Social Slots Games in violation of California Penal Code Section 330b. ............................. 4

    B.    Zynga makes hundreds of millions of dollars by developing, owning, and operating the Zynga Social Slots Games. ............................................................ 11

    C.    Zynga's developing, owning, operating, marketing, and profiting from the Zynga Social Slots Games constitute unlawful, unfair and fraudulent business acts and practices that violate California's Unfair Competition Law. ............................................................................................................. 20

        1.    Zynga intentionally and unfairly gets users hooked on the Zynga Social Slots Games by marketing them as "free to play" and by giving initial allotments of "free" coins. ................................................ 20

        2.    Zynga intentionally and unfairly profits by offering slot machine games, which are the most addictive form of casino gambling. ............... 20

        3.    Zynga intentionally and unfairly uses the virtual platform of its social slots games to maximize the time its users spend playing the Zynga Social Slots Games. ...................................................................... 30

        4.    Zynga intentionally and unfairly targets individuals with addictive tendencies. ................................................................................................ 37

        5.    Zynga intentionally and unfairly uses microtransactions and virtual coins to mask the fact that the user is paying money to play. ................... 44

        6.    Zynga fraudulently markets the Zynga Social Slots Games as legal video games and does not disclose that they are in fact illegal slot machines. .......................................................................................... 47

    D.    Zynga's business acts in developing, owning, operating, marketing, and profiting from the Zynga Social Slots Games violate California's Unfair Competition Law regardless of where the users are located. ............................... 53

Plaintiffs' Allegations ........................................................................................................ 54

    A.    Michael Owens ....................................................................................... 55

    B.    Jennie Plumley ....................................................................................... 56

    C.    Jon Schweitzer ....................................................................................... 60

    D.    Charlie Finlay ......................................................................................... 62

    E.    Melissa Irelan ......................................................................................... 69

First Amended Class Action Complaint                  Case No. 3:21-cv-01427-LB

Class Action Allegations ........................................................................................ 70

    A.    The proposed class. ........................................................................... 70

    B.    The proposed class satisfies the numerosity requirement. ................... 71

    C.    The proposed class satisfies the commonality requirement. ................. 71

    D.    Plaintiffs' claims are typical of those of the proposed class. ............... 72

    E.    Plaintiffs are adequate class representatives. ..................................... 72

    F.    Final injunctive relief is appropriate respecting the class as a whole. ................. 73

    G.    Common questions of law and fact predominate, and a class action is a superior method for the adjudication of this litigation. .......................... 73

    H.    The proposed class is ascertainable. ................................................... 74

Claims ................................................................................................................. 74

Prayer for Relief .................................................................................................. 79

Jury Demand ....................................................................................................... 79

First Amended Class Action Complaint              Case No. 3:21-cv-01427-LB

**Introduction**

1.      Defendant Zynga Inc. is a California-based company that develops video games that can be played online or on apps downloaded on mobile platforms.  In the early 2010s, Zynga was under a great deal of financial stress.  As of October 2012, Zynga had lost more than three-quarters of its market value in that year alone. [1]  As one analyst put it, "while Zynga [had] added more and more overall users, it [was] struggling to make money off of them." [2]

2.      In a move to turn the company's financials around, Zynga's leadership decided that the company should move in the direction of online gambling.  For example, in October of 2012, Zynga announced a partnership with a British company that would allow Zynga to operate real-money online gambling through online poker, slots, and roulette games in the UK. [3] Zynga's then-CFO Dave Wehner stated on behalf of the company: "We view this as a first step into real money gaming. … We believe it's a good first step, but only a first step towards what we think is a big opportunity for Zynga." [4]

3.      After Zynga recognized the profitability of modeling its online games after the gambling industry, Zynga began developing and offering "social slots" games.  Zynga intentionally modeled its "social slots" games precisely after Vegas-style slot machines.  Users make "bets" on "spins" using in-game currency.  Users are given an initial allotment of free in-game currency.  But when users exhaust their supplies of free in-game currency, they must purchase more to keep playing—and must do so with real money.

4.      Zynga's "social slots" games are unlawful slot machines under California law. Moreover, these games utilize the same psychological tricks that casinos and physical slot machines use to cause users to become addicted.  This keeps users playing—and spending.  And

---

[1] Laurie Segall, *Zynga Surges on Higher Sales, Casino Gaming Plans*, CNN Business (Oct. 25, 2012), https://money.cnn.com/2012/10/24/technology/zynga-earnings/.
[2] Cyrus Farivar, *Zynga's Financial Troubles Worsen, Company Falling Faster than Before*, Ars Technica (Oct. 4, 2012), https://arstechnica.com/information-technology/2012/10/zyngas-financial-troubles-worsen-company-falling-faster-than-before/.
[3] Segall, *supra*.
[4] *Id.*

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

the virtual platform only increases the opportunities to capitalize on the addictive tendencies of users.

5.      Zynga has unlawfully, unfairly, and fraudulently made hundreds of millions of dollars from its "social slots" games.  Plaintiffs bring this case on behalf of themselves and other users, seeking to end Zynga's unlawful, unfair, and fraudulent practices in relation to its "social slots" games.

**Parties**

6.      Plaintiff Michael Owens is a citizen of Florida (domiciled in Lantana, Florida). Mr. Owens has lost over $8,000 playing Defendant's "social slots" games.

7.      Plaintiff Jennie Plumley is a citizen of South Carolina (domiciled in Campobello, South Carolina).  Ms. Plumley has lost over $340,000 playing Defendant's "social slots" games.

8.      Plaintiff Jon Schweitzer is a citizen of Florida (domiciled in Miami, Florida).  Mr. Schweitzer has lost over $350,000 playing Defendant's "social slots" games.

9.      Plaintiff Charlie Finlay is a citizen of New York (domiciled in New York, New York).  Mr. Finlay has lost over $200,000 playing Defendant's "social slots" games.

10.     Plaintiff Melissa Irelan is a citizen of California (domiciled in Sacramento, California).  Ms. Irelan has lost over $40,000 playing Defendant's "social slots" games.

11.     Defendant Zynga Inc. is a Delaware Corporation with its principal place of business in California.  Zynga's headquarters are located at 699 Eighth Street, San Francisco, CA 94103.  Zynga develops, owns, markets, and operates games that are played on mobile platforms, such as Apple's iOS and Google's Android, and social networking platforms, such as Facebook and Snapchat.

**Jurisdiction and Venue**

12.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more members of the proposed class are citizens of a state different from any one of the Defendants.

13.     Venue is proper under 28 U.S.C. § 1391(b)(1) & (2), because Defendant resides

2

in this district.  In addition, a substantial part of the Defendant's conduct giving rise to the claims occurred in this district.

<u>**Common Allegations**</u>

14.     Zynga develops and operates "social slots" games.  "Social slots" games are virtual slot machines that allow users to make bets using virtual "coins."  Zynga's current social slots games include:

- Hit it Rich!
- Black Diamond Casino
- Wizard of Oz Slots
- Willy Wonka Slots
- Game of Thrones Slots Casino

15.     Zynga previously offered additional social slots games, which it has since discontinued.  These include:

- Spin it Rich! Free Casino Slots
- Princess Bride Slots
- Slots – Riches of Olympus

16.     This Complaint refers to Zynga's "social slots" games—including each of the games identified above, as well as any additional social slots games that Zynga develops or operates, now or in the future, as the "Zynga Social Slots Games."

17.     Consumers can download and/or play Zynga's social slots games on various mobile and online platforms including the Google Play Store and the Apple App Store, Facebook, and the Amazon Appstore.

18.     As shown below, the Zynga Social Slots Games are illegal slot machines that violate California Penal Code Section 330b.  And by developing, owning, operating, marketing, and profiting from the Zynga Social Slots Games, Zynga violates California's Unfair Competition Law, which prohibits "any unlawful, unfair or fraudulent business act."  Cal. Bus. & Prof. Code § 17200.

19.     Plaintiffs bring this case on behalf of themselves and a class of similarly situated

3

consumers, to recover money lost as a result of Zynga's unlawful, unfair, and fraudulent acts in connection with the Zynga Social Slots Games, and to enjoin Zynga from continuing to develop, own, operate, market, and profit from the Zynga Social Slots Games.

**A.     Zynga unlawfully develops, owns, and operates the Zynga Social Slots Games in violation of California Penal Code Section 330b.**

20.     In California, it is a criminal offense to make, own, sell, or operate a "slot machine." Cal. Pen. Code § 330b(a). A "slot machine" is "a machine, apparatus, or device that is adapted … for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device…." Cal. Pen. Code § 330b(d).

21.     The Zynga Social Slots Games, and the virtual slot machines that they contain, are illegal slot machines.

22.     Indeed, each of the Zynga Social Slots Games consists of a series of virtual slot machines. For example, here is the home screen for Zynga's Hit it Rich! social slots game on iOS, showing some of the slot machines the user can play:



4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23.     Here is the home screen for Zynga's Black Diamond Casino on iOS, showing some of the slot machines the user can play:



24.     Here is the home screen for Zynga's Wizard of Oz Slots on iOS, showing some of the slot machines the user can play:



25.     Each of the virtual slot machines that the user can play within the Zynga Social

First Amended Class Action Complaint                          Case No. 3:21-cv-01427-LB

Slots Games is a "Vegas style" slot machine that is "based upon traditional casino … slots." [5]
These virtual slot machines look, sound, and operate just like traditional, physical slot machines
(like the ones in Las Vegas casinos). According to Zynga, its virtual slot machines include
"Vegas style slot machine game design, graphics and sounds." [6]

26.     Each slot machine within each of the Zynga Social Slots Games includes a series
of "reels" with images or pictures printed on them. For example, here is a screenshot of the
"Slingo Gold Bonus" slot machine in Zynga's Hit it Rich! social slots game:



27.     To operate a slot machine within each of the Zynga Social Slots Games, the user
must place a "bet" using virtual "coins" or slot machine "credits." [7] To do so, the user must first
select the quantity of coins he or she wants to bet (in the example above, using the pink arrows
on the bottom left-hand corner of the screen) and then "spin" the slot machine (in the example
above, using the green "SPIN" button in the bottom right-hand corner of the screen). Each slot

---

[5] Zynga 2019 10K, 1, 5.
[6] *Hit it Rich! Lucky Vegas Casino Slot Machine Game*, Google Play,
https://play.google.com/store/apps/details?id=com.zynga.hititrich&hl=en_US&gl=US; *see, e.g.*,
*Willy Wonka Slots Free Casino*, Google Play,
https://play.google.com/store/apps/details?id=com.zynga.wonka&hl=en_US&gl=US (promising
"authentic, casino-style slot machine games" with "Las Vegas style slot machines!").
[7] The various games use "coins" or "credits" to refer to the tokens that the user uses to
play the slot machines. This complaint refers to them as "coins" for consistency.

First Amended Class Action Complaint                                    Case No. 3:21-cv-01427-LB

machine has a minimum "bet" and cannot be played without placing at least that minimum bet. For example, the minimum bet for the Slingo Gold Bonus slot machine above is 60,000 coins.

28.     When the user presses the "SPIN" button, the amount the user decided to bet is subtracted from the user's supply of coins.  The slot machine makes noises resembling those of a physical slot machine.  The virtual slot machine's reels "spin," meaning that the images in each column rotate.  The user can stop the spinning manually by pressing a "STOP" button or by pressing the "SPIN" button a second time.  Alternatively, if the user does not manually stop the spin, the reels stop spinning after a predetermined amount of time.

29.     What happens next depends on the outcome of the spin, i.e., what images appear in the visible rows of the slot machine's screen when the reels stop spinning.  If, when the reels stop spinning, the images in the visible rows correspond to a winning combination, the user wins coins.  Otherwise, the user receives nothing and loses his or her bet.

30.     The outcome of each spin is entirely dependent on chance and unpredictable to the user.  A player's experience or skill has no impact whatsoever on the probability of success or failure.  For example, here is Zynga's description of how the outcomes of each "spin" are determined in the Black Diamond Casino support page:

> All of our slot machines are programmed with a random number generator (RNG) that is activated with every spin.  It is a hyper-fast computer program that spits out well over one hundred random numbers each second in a non-repetitive manner. The instant you press the spin button the system locks into a series of RNG numbers, using a mathematical equation, and with the lightning fast speed, tells the reels where to stop.
>
> Each push of the spin button provides each player with an equal chance at hitting a jackpot or other winning configuration; however user experience may differ between players.  All spins have the same probability of success or failure, regardless of the player, level, experience, balance, or time spent playing. [8]

31.     Each of the Zynga Social Slots Games determines the outcome of each spin in this

---

[8] *What Are Payouts?*, Black Diamond Casino Support Page, https://zyngasupport.helpshift.com/a/black-diamond-casino/?s=getting-started&f=what-are-payouts&l=en (last visited Feb. 22, 2021).

7

1    manner or a substantially similar way.  Accordingly, the outcome of each spin within the Zynga

2    Social Slots Games is determined by reason of chance, and is unpredictable to the user.

3          32.    Whether or not a user wins coins depends on whether a winning combination

4    appears on a "pay line" of the slot machine.  A pay line is a line that goes from left to right

5    across the slot machine's reels.  Pay lines can be straight or zigzag lines.  If a winning

6    combination of images appears on a given pay line, the user wins coins from that pay line.

7          33.    The Zynga Social Slots Games generally have multiple pay lines.  If winning

8    combinations appear on multiple pay lines, the user wins the total number of coins from all

9    winning pay lines.  The number of coins the user wins from a given pay line is determined by a

10   "pay table," which shows what combination of images are wins and the amount of each win.

11         34.    Here is an example pay table from the "Slingo Gold Bonus" slot machine in the

12   Hit it Rich! social slots game:



23         35.    In the pay table above, listed below each symbol is the number of coins that the

24   user will win if that symbol appears three or more times consecutively on a pay line.  For

25   example, if three red 7s appear consecutively on a pay line, the user will win 60,000 coins from

26   that pay line.  If four red 7s appear consecutively on a pay line, the user will win 240,000 coins

27   from that pay line.  If five red 7s appear consecutively on a pay line, the user will win 360,000

28   coins from that pay line.

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

1
2
3

36.     For example, in the screenshot below, three red sevens appear consecutively on Line 2, the pay line marked in red that goes straight across the fourth row of the slot machine. Therefore, the user wins 60,000 coins from Line 2.

4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21

37.     The user can use any coins he or she wins from successful "bets" for additional gameplay, i.e., to continue spinning the slot machine or other slot machines within the Zynga Social Slots Game he or she is playing.  Accordingly, a successful spin entitles the user to receive a "credit," a "thing of value," and an "additional chance or right to use the slot machine or device."  In each of the Zynga Social Slots Games, each slot machine provides the user with a chance to win sufficient "coins" to "spin" a slot machine within that game again.  In other words, for each slot machine, the number of coins the user has a chance to win exceeds the minimum bet for that slot machine.

22
23
24
25
26
27
28

38.     Just like physical slot machines, the user cannot "spin" the slot machine if the user does not have sufficient "coins" in his or her account.  Moreover, this is the only use of coins.  Users cannot use coins to enhance gameplay (for example, to buy new characters, etc.).  Coins can only be used to extend gameplay, i.e., to continue to use the game.  Moreover, as explained below, users spend real money to purchase "coins." (Some, like Plaintiffs, spend thousands, tens of thousands, or even hundreds of thousands of dollars on coins.)  Accordingly, coins are a "thing of value."  Moreover, coins represent "an additional chance or right to use the

9

slot machine or device."

39.     Zynga maintains records of its users' wins and losses, so that a user can exit the game and return at a later time to play with the same balance of coins the user had when he or she exited the game.

40.     In addition to coins, Zynga's virtual slot machines allow the user to win free spins or bonus games.  These free spins and bonus games occur automatically after the user wins them. For example, based on the pay table above, if a "bonus" icon appears in the first, third, and fifth columns, the user wins a bonus minigame.  Accordingly, a successful spin entitles the user to receive an "additional chance or right to use the slot machine or device" for this additional reason.

41.     The outcomes of the free spins and bonus games, like the outcomes of the slot machines, are entirely dependent upon luck and unpredictable to the user.  For example, here is Zynga's description of the bonus game in the above slot machine:



42.     And below is an example of a user receiving "free spins" in the "Munchkinland" slot machine in Wizard of Oz Slots.  When the user wins free spins in that slot machine, the machine spins ten times without the user having to place a bet.  In the image below, the user has completed three out of ten free spins, as indicated in the bottom-right corner.

10

First Amended Class Action Complaint                     Case No. 3:21-cv-01427-LB

43.     The client source code, executable code, and/or other computer code for each of the Zynga Social Slots Games and the virtual slot machines contained within them meets the definition of a "slot machine" under California Penal Code 330b.  In addition, and/or in the alternative, the client source code, executable code, and/or other computer code for each of Zynga's Social Slots Games in combination with Zynga's server-side source code, executable code, and/or other computer code meets the definition of a "slot machine" under California Penal Code 330b.  In addition, each of the foregoing alternatives in combination with either of (a) servers and/or other server-side components, and/or (b) client devices and/or client-side components (such as mobile phones or computers) meet the definition of a "slot machine" under California Penal Code 330b.

44.     Zynga develops, owns, and operates the client-side and server-side source code, executable code, and/or other computer code for each of the Zynga Social Slots Games and the virtual slot machines contained therein.  Zynga owns, operates, and/or controls the servers and/or server-side components involved in providing and operating the Zynga Social Slots Games.

**B.      Zynga makes hundreds of millions of dollars by developing, owning, and operating the Zynga Social Slots Games.**

45.     Zynga markets the Zynga Social Slots Games as "free to play."  What Zynga means by this is that the user does not have to pay to download or access the games, and that the

11

user can engage in some amount of gameplay (i.e., spins) for free as a result of being awarded a limited number of free coins.

46.     Zynga, however, is not a charity.  Nor does it make most of its money through paid advertising like other technology companies.  Instead, Zynga profits from the Zynga Social Slots Games by selling coins to users who run out of coins but want to continue betting. [9]  Zynga has made hundreds of millions of dollars doing this.

47.     To entice users to play the Zynga Social Slots Games, Zynga makes them free to download and advertises them as free to play.  Zynga also grants new users an initial allotment of free coins in each game.  Zynga offers this initial allotment to get the user spinning and hooked on Zynga's addictive social slots games.

48.     Once the user uses his or her initial allotment of free coins, he or she is unable to play the slot machines within the Zynga Social Slots Games anymore.  When the user does not have enough coins to play a slot machine, Zynga prompts the user to purchase more coins to continue playing.  Zynga presents the user with pop-up screens that contain either options to purchase more coins on the screen itself or a button that takes the user to the in-game store.

49.     For example, when a user lacks sufficient coins to place a bet in Hit it Rich! on iOS, the following screen pops up:

---

[9] Zynga 2019 10K 3 ("Our primary revenue source is through the sale of in-game virtual currency that players use to buy virtual goods or through the sale of virtual goods directly (together, defined as 'virtual items').").

1
2
3
4
5
6
7
8
9
10



11    50.    Similarly, when a user lacks sufficient coins to place a bet in Black Diamond

12  Casino on iOS, the following screen pops up:

13
14
15
16
17
18
19
20
21
22
23

24    51.    Pressing "GET COINS!" on the Black Diamond Casino pop-up screen takes the

25  user to the in-game store:

26
27
28

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB



52.     Zynga also makes the store easily accessible in each of the Zynga Social Slots Games from the home screen and while playing the slot machines.  Bright green or gold buttons that say "BUY" or "BUY COINS" take the user directly to the in-game store.

53.     For example, here is a screenshot of the in-game store in Wizard of Oz Slots on iOS:



54.     Additionally, Zynga frequently presents users with "deals," "sales," or "special offers" through pop-up notifications.  For example, here are screenshots of some of the pop-up

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

screens that Zynga presents users with:





First Amended Class Action Complaint                          Case No. 3:21-cv-01427-LB

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27
28

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

1
2
3
4
5
6
7
8
9
10
11



12   55.     Zynga sells coins through the platform that the game is played on.  Users playing

13   on games downloaded from the Apple App Store make payments through the Apple App Store.

14   Users playing on games downloaded from the Google Play Store make payments through

15   Google Play.  Users playing on games downloaded from the Amazon Appstore make payments

16   through Amazon.  Users playing on Facebook make payments through Facebook Pay.  Zynga

17   also makes coin purchases available through its website.

18   56.     For example, here is a screenshot of a payment screen on Wizard of Oz Slots,

19   downloaded from the Google Play Store and being played on an Android phone:

20
21
22
23
24
25
26
27
28

First Amended Class Action Complaint                          Case No. 3:21-cv-01427-LB

1
2
3
4
5
6
7
8
9
10
11



12
13      57.     And here is an example of a payment screen for the same purchase on Wizard of

Oz Slots, downloaded from the Apple App Store and being played on an Apple iPhone:

14
15
16
17
18
19
20
21
22      58.     And here is an example of a payment screen for the same purchase on Wizard of

23 Oz Slots being played on Facebook:
24
25
26
27
28

First Amended Class Action Complaint                          Case No. 3:21-cv-01427-LB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    59.    These transactions are called "microtransactions" or "micropayments" in the

18  video game industry because most individual purchases are for relatively small amounts of

19  money.  But in the aggregate, these microtransactions amount to enormous profits for Zynga—

20  and disastrous losses for users addicted to the Zynga Social Slots Games.

21    60.    Zynga makes hundreds of millions of dollars per year selling such coins to the

22  users of the Zynga Social Slots Games.  Moreover, the vast majority of this revenue comes from

23  a small percentage of users who become addicted to playing—just like gambling addicts become

24  addicted to physical slot machines in Las Vegas and other places where gambling businesses are

25  allowed.  Unlike physical slot machines, which are regulated by gambling commissions designed

26  to protect those suffering from gambling addiction, Zynga's social slot machines are entirely

27  unregulated.  Worse, as shown below, Zynga intentionally engages in unfair business practices

28  and acts designed to prey on those with addictive tendencies to increase its profits.

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

**C.      Zynga's developing, owning, operating, marketing, and profiting from the Zynga Social Slots Games constitute unlawful, unfair and fraudulent business acts and practices that violate California's Unfair Competition Law.**

61.     As described above, Zynga's acts of developing, owning, and operating "slot machines" are illegal (in fact, they are criminal violations).  Moreover, those acts are business acts: Zynga develops, owns, and operates the Zynga Social Slots Games as part of its game development business, to make a profit.  Accordingly, Zynga's acts in connection with the Zynga Social Slots Games constitute unlawful business acts and practices.

62.     In addition, Zynga's acts in connection with the Zynga Social Slots Games constitute unfair and/or fraudulent business acts and practices, for the following reasons.

**1.      Zynga intentionally and unfairly gets users hooked on the Zynga Social Slots Games by marketing them as "free to play" and by giving initial allotments of "free" coins.**

63.     As explained above, Zynga markets its social slots games as "free to play" and gives users an initial allotment of free coins.  These acts are designed to get users to begin playing the social slots without having to pay anything, so that they become hooked on playing the game.  And these acts are unfair: as Zynga knows, gambling games (and especially slot machines) are addictive, and as Zynga knows, many users will eventually become addicted and spend thousands of dollars on the supposedly "free" games it markets.  This is especially true because, as described below, Zynga specifically designs every aspect of its gameplay to prey on the addictive tendencies of its users, to get its users to spend money to maximize its profits.

**2.      Zynga intentionally and unfairly profits by offering slot machine games, which are the most addictive form of casino gambling.**

64.     Slot machines are considered by experts to be the most addictive form of casino gambling.  As one article explains, "[p]roblem gambling prevalence studies show that gambling addicts are much more likely to play electronic gaming machines (slot machines, poker

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

machines, video lottery terminals) than table games like blackjack." [10]  And a study by Brown University psychologists found that individuals who gambled on machines became addicted three to four times faster (1.08 years as opposed to 3.58 years) than those who engaged in more traditional forms of gambling. [11]

65.    MIT anthropologist Natasha Dow Schüll, author of the award-winning *Addiction by Design: Machine Gambling in Las Vegas*, explains why slot machines are "the most potent" form of gambling addiction: "Playing on slot machine is solitary, rapid, and continuous.  You don't have interruptions like you would in a live poker game, waiting for cards to be dealt or waiting for the other players.  You can go directly from one hand to the next—there's no clear stopping point built into the game.  You don't even have to stop to put bills in the machine; the machines take credit or barcoded tickets." [12]

66.    Zynga intentionally designs the Zynga Social Slots Games to utilize these same features that cause addiction to physical slot machines.  Like physical slot machines, playing the Zynga Social Slots Games is solitary, rapid, and continuous.  The user can spin and spin with no stopping points—that is, until the user runs out of coins.

67.    The user does not need to put bills into the machine or even swipe a ticket to operate the slot machines.  All the user needs to do is press the inviting "SPIN" button in the corner of the screen.  Indeed, Zynga even installed automatic spin options in each of the Zynga Social Slots Games that allow users to dispense with even this step.  Users can let the machine spin indefinitely without any action on their part, as shown by this screenshot from Hit it Rich!:

---

[10] Roger Collier, *Do Slot Machines Play Mind Games with Gamblers?*, 179 CMAJ 23 (2008), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2464464/

[11] Robert B. Breen & Mark Zimmerman, *Rapid Onset of Pathological Gambling in Machine Gamblers*, 18 J. Gambling Studies 31 (2002), available at: http://stoppredatorygambling.org/wp-content/uploads/2013/04/Breen-and-Zimmerman-Rapid-Onset-of-Pathological-Gambling-in-Machines-Gamblers.pdf.

[12] Alice Robb, *Why Are Slot Machines So Addictive?*, The New Republic (Dec. 5, 2013), https://newrepublic.com/article/115838/gambling-addiction-why-are-slot-machines-so-addictive.

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB



68.     Another reason slot machines are so addictive is that they cause the user's brain to release dopamine, a chemical that creates feelings of pleasure.

69.     Dopamine is particularly potent where risk or uncertainty is involved.  As Mike Robinson, a psychology professor and addiction researcher at Wesleyan University describes:

> "One of the hallmarks of gambling is its uncertainty—whether it's the size of a jackpot or the probability of winning at all.  And reward uncertainty plays a crucial role in gambling's attraction.  Dopamine, the neurotransmitter the brain releases during enjoyable activities such as eating, sex and drugs, is also released during situations where the reward is uncertain.  In fact dopamine release increases particularly during the moments leading up to a potential reward.  This anticipation effect might explain why dopamine release parallels an individual's levels of gambling 'high' and the severity of his or her gambling addiction.  It likely also plays a role in reinforcing the risk-taking behavior seen in gambling." [13]

70.     Slot machines produce lights and sounds when users win.  Studies have found that "the lights and noises that gambling machines produce increase the pleasure of winning, dampen a player's ability to understand the risks, and increase the likelihood of them taking more

---

[13] Mike Robinson, *How Gambling Distorts Reality and Hooks your Brain*, Fast Company (Aug. 15, 2018), https://www.fastcompany.com/90217918/how-gambling-distorts-reality-and-hooks-your-brain

First Amended Class Action Complaint                                    Case No. 3:21-cv-01427-LB

risks." [14]

71.     Moreover, lights and sounds "become more attractive and capable of triggering urges to play when they are paired with reward uncertainty.  In particular, win-associated cues–such as jingles that vary in length and size as a function of jackpot size–both increase excitement and lead gamblers to overestimate how often they are winning.  Crucially, they can also keep you gambling longer and encourage you to play faster." [15]

72.     Zynga intentionally designed the Zynga Social Slots Games to trigger the same dopamine releases that cause addiction to physical slot machines.  Like physical slot machines, Zynga's virtual slot machines award the user with lights and sounds when the user wins.  These lights and sounds cause the user's brain to release dopamine, and users get hooked chasing these dopamine releases.

73.     Moreover, the virtual platforms of the Zynga Social Slots Games allow Zynga to create especially addictive dopamine triggers.  For example, when the user wins, the Zynga Social Slots Games award the user with—in addition to coins or bonus games—graphics, animations, gratifying sounds, and occasionally even a voice saying something like "Now that's a win worth waiting for!" or "Win once and you just can't stop!"  For example, on this win, the images on all of the winning lines popped out and flashed in turn, and a voice said "Win once and you just can't stop!":

---

[14] Tim Newman, *How Lights and Sounds Encourage Risky Behavior*, Medical News Today (Nov. 1, 2018), https://www.medicalnewstoday.com/articles/323504
[15] Robinson, *supra*.

23

74.     On particularly large wins, Zynga's games award the user with special animations and sounds congratulating the user on an "EPIC WIN," "MEGA WIN," or "BIG WIN."  For example:

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27
28

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB





75.     Moreover, Zynga designs the Zynga Social Slots Games to induce dopamine reactions in users even when users *lose* coins on a spin.

76.     Modern slot machines with multiple pay lines frequently trick users into thinking they won, even though they suffered a net loss on the wager.  Robinson explains:

"Having multiple lines enables players to place a bunch of bets per spin, often up to 20 or more.  Although each individual bet can be small, many players place the maximum number of bets on each spin.  This strategy means a player can win on some lines while losing on others, netting less than the original wager.  Even when you 'win,' you don't come out ahead, a phenomenon known as 'losses disguised as wins.'  Yet each win, even when it is a loss disguised as a win, comes

26

with the lights and sounds of victory.  The result is that these multi-line slot
machines produce more enjoyment and are highly preferred by players.
Crucially, they tend to make gamblers overestimate how often they're truly
winning.  The dramatic increase in the frequency of wins, whether real or
fabricated, produces more arousal and activation of reward pathways in the brain,
possibly accelerating the rate at which brain changes occur.  Multi-line slots also
seem to promote the development of 'dark flow,' a trance-like state in which
players get wholly absorbed in the game, sometimes for hours on end." [16]

77.     And Schüll concurs: "With multi-line slot machines, say you put in a hundred
coins.  If you're betting on 100 lines of play, you'll always 'win' something back.  If you put in
40 coins and get 30 back, that's a net loss, a 'false win', but the machine responds as if you've
won: The lights go off, you get the same audiovisual feedback.  Almost every hand, you get the
same result— there are no dry spells." [17]

78.     The vast majority (if not all) of the virtual slot machines within each of the Zynga
Social Slots Games have multiple pay lines.  Some of Zynga's virtual slot machines have at least
as many as 70 pay lines.  Moreover, Zynga designed its games so that all pay lines are
automatically in play.  The result is that the user frequently receives the same audiovisual
feedback and dopamine triggers that accompany a win, even when he or she suffers a net loss on
a spin.  This makes users overestimate how much they are winning and hooks them on the
dopamine triggers more quickly.

79.     For example, on the following spin in Hit it Rich!, the user bet 600,000 coins and
won 30,000 coins on each of five pay lines (Lines 8, 13, 16, 17, and 36), for a total of 150,000
coins.  Although on net the user lost 450,000 coins on this spin, the game treats it as a win and
presents the user with the same audiovisual feedback as if the user had won.

---

[16] Robinson, *supra*.
[17] Robb, *supra*.

First Amended Class Action Complaint                                    Case No. 3:21-cv-01427-LB



80.   Similarly, on the following spin in Wizard of Oz Slots, the user bet 500,000 coins and won a total of 200,000 coins.  Although on net the user lost 300,000 coins on this spin, the game treats it as a win and presents the user with the same audiovisual feedback as if the user had won.



81.   Zynga also seeks to keep its users playing its slot machines with "near misses" or "almost wins."  Studies have found that "near-misses convey a positive reward signal encoded

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

by the dopaminergic circuits that support reward expectancy and reinforcement learning." [18]  In other words, they motivate the user to keep playing in order to achieve a true win.

> Indeed, these near misses can be even more addictive than wins.  Robinson explains: "These near-miss almost-wins recruit areas of the brain that usually respond to wins, and increase one's desire to play more, especially in problem gamblers. … Near-misses are more arousing than losses–despite being more frustrating and significantly less pleasant than missing by a longshot.  But crucially, almost winning triggers a more substantial urge to play than even winning itself.  Near-misses seem to be highly motivating and increase player commitment to a game, resulting in individuals playing longer than they intended.  The size of the dopamine response to a near-miss in fact correlates with the severity of an individual's gambling addiction." [19]

82.     Just like physical slot machines, Zynga uses near misses to keep users playing its virtual slot machines.  For example, in the "Red, White, and Boom" slot machine in Hit it Rich!, the user receives bonus spins if three "Free Spins" symbols appear.  Each time a "Free Spins" symbol appears, the game makes a noise and an animation.  If two "Free Spins" symbols appear in the first four columns, the fifth column turns blue and spins quickly for an extended period of time, building anticipation.  Therefore, even if the third "Free Spins" symbol does not appear—and most times it does not—the game highlights the near miss, motivating the user to keep spinning.

---

[18] Catharine A Winstanley, Paul J. Cocker & Robert D. Rogers, *Dopamine Modulates Reward Expectancy During Performance of a Slot Machine Task in Rats: Evidence for a 'Near-miss' Effect*, 36 Neuropsychopharmacology 913 (2011), available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3077261/.

[19] Robinson, *supra*.





83.     Thus, in sum, by developing, owning, operating, and marketing the Zynga Social Slots Games, Zynga promotes the most addictive form of gambling possible and makes it easily accessible to users, right in their pocket.  In doing so, Zynga unfairly preys on the addictive tendencies of certain users.

**3.     Zynga intentionally and unfairly uses the virtual platform of its social slots games to maximize the time its users spend playing the Zynga Social Slots Games.**

84.     The gambling industry has a term—"time on device"—that refers to the average

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

amount of time that a gambler spends on a gambling device. [20]  Casinos and slot machine manufacturers use "time on device" as a predictor of a machine's profitability.

85.     In addition to the continuous play and dopamine triggers described above, incentives to play more serve a key role in keeping users spending time on gambling devices.  As one article describes: "In casinos, loyalty schemes play an integral role.  Frequent gamblers are offered free food and drinks, keeping the gambler coming back time after time.  A similar strategy is used in freemium games, via login bonuses, daily quests and a myriad of perks and freebies to entice players into the game, again and again." [21]

86.     The virtual platforms of the Zynga Social Slots Games provide Zynga a variety of avenues to ensure that users spend as much time as possible playing the games.  Zynga takes full advantage of these opportunities.

87.     One way that Zynga does this is through daily bonuses.  Zynga's daily bonuses reward the user with coins for playing each day, and they get larger the more consecutive days the user plays in a row.  If the user does not play on a given day, the user not only forfeits the bonus for that day but also loses his or her streak, meaning smaller bonuses in future days.  For example, here is a screenshot of the daily rewards on Hit it Rich! and Game of Thrones Slots, respectively:

---

[20] Natasha Dow Schüll, *Slot Machines Are Designed to Addict*, N.Y. Times (Oct. 10, 2013), https://www.nytimes.com/roomfordebate/2013/10/09/are-casinos-too-much-of-a-gamble/slot-machines-are-designed-to-addict.

[21] Vanshika Dhyani, *The Psychology of Freemium Games*, UX Planet (June 8, 2020), https://uxplanet.org/the-psychology-of-freemium-games-69024d80273b.

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21      88.      In addition to daily bonuses, the Zynga Social Slots Games offer users bonuses

22  that reset after a certain number of hours.  These bonuses award the user a raw number of coins

23  or a number based on the outcome of a luck-based minigame.  For example, here are screenshots

24  of hourly bonuses from Hit it Rich! and Wizard of Oz Slots, respectively:

25
26
27
28

First Amended Class Action Complaint                            Case No. 3:21-cv-01427-LB

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21  89.    The reset timer on these bonuses does not begin running until the user collects the

22  bonus.  That means that every hour that the user does not play the Zynga Social Slots Games, the

23  user is missing out on free coins.  Thus, Zynga provides an incentive for the user to play every

24  hour in order to maximize the number of coins from bonuses.

25  90.    These daily and hourly bonuses are particularly effective because Zynga's slot

26  machines are easily accessible by the user anywhere at any time.  Unlike physical slot machines

27  that can be played only when the user ventures to the casino, the Zynga Social Slots Games can

28  be played on mobile devices that users take everywhere.  Users can gamble at Zynga's slot

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

machines while watching television, commuting to and from work, eating meals, or waiting in line.

91.     Zynga takes full advantage of the accessibility of the Zynga Social Slots Games by sending users notifications on their mobile devices when their daily and hourly bonuses are ready to be collected.  These notifications appear on the user's device even when the user is not using the game, and say things like "Time to collect your Daily Bonus!  Don't miss out on FREE COINS!" and "Hip, hip, hooray!  Your Bonus is ready!  Hurry and collect NOW!"

92.     Zynga also sends users notifications that do not relate to their bonuses.  Zynga often sends multiple of these notifications each day.  These notifications say things like "Don't Miss Out on the Hump Day Special!  Start Spinning!," "Lightning Storm is LIVE ! Watch out, these Jackpots are hitting ALL THE TIME!," and "Multi Jackpots are HITTING!  Play on Multi Jackpot Machines for a chance to win the MASSIVE Jackpot!"

93.     Another incentive that Zynga uses to keep players spinning is the "level up" feature.  In each game, the user starts at Level 1 and can level up only by spinning the slot machines.  Each spin takes the user closer to the next level.  Thus, the more the user spins, the faster the user reaches the next level.  For example, here is how Zynga describes leveling up on Hit it Rich!:

> "Every bet made in the casino will increase your XP (experience) bar.  The amount you bet per spin will increase your XP by that same amount.  The more you play in Hit It Rich, the quicker you will increase your experience and level up.  Your current level is always displayed at the top of the screen, whether you are playing one of our games or are in the Lobby." [22]

94.     Leveling up is desirable to the user because many slot machines and other features are accessible only once the user reaches a certain level.  Leveling up also allows the user to place higher bets.

95.     For example, here are screenshots of slot machines in Game of Thrones Slots, Hit

---

[22] *How Do I Level Up?*, Hit it Rich! Support Page, https://zyngasupport.helpshift.com/a/hit-it-rich/?s=getting-started&f=how-do-i-level-up&l=en (last visited Feb. 22, 2021)

it Rich!, and Black Diamond Casino that are inaccessible until a user reaches a certain level:





35

1
2
3
4
5
6
7
8
9
10



11  96.     And here is an example of a user reaching a new level and unlocking a new slot

12  machine in Wizard of Oz Slots:

13
14
15
16
17
18
19
20
21
22
23



24
25
26
27
28

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB



97.     Thus, in sum, Zynga specifically designs the Zynga Social Slots Games to be as addictive as possible, for the express purpose of causing its users to become addicted and spend more money.

**4.     Zynga intentionally and unfairly targets individuals with addictive tendencies.**

98.     Although Zynga has a wide player base for the Zynga Social Slots Games, the vast majority of Zynga's revenue comes from a very small number of users.

99.     These users—called "whales" in the video game industry—are the players that developers most seek to attract, addict, and profit from.  As one article describes:

> Most players never pay, and most of those who do pay very little.  Instead, most revenue from micropayments is highly concentrated among a small group of apparent addicts who individually spend thousands of dollars on in-app purchases. One study showed that 0.15 percent of mobile gamers account for 50 percent of the industry's revenue from micropayments.  About 1.9 percent make up 90 percent of revenue.  These gamers are called "whales" within the video game industry, and they compensate for the overwhelming majority of gamers who either never pay or who pay very little.  In this respect, the video game industry's revenue structure is coming to resemble that of the gambling industry and the alcohol industry, where addicted customers also account for most of the profits. The term "whale," in fact, originated in the casino industry.  And as in the casino

First Amended Class Action Complaint                          Case No. 3:21-cv-01427-LB

industry, the whale-centered model can be highly profitable. [23]

100.    For example, a PBS report describes how one user lost $400,000 to a social casino game very similar to Zynga's social slots.  The report also describes conversations with former employees of social casino developers in which those employees recounted stories of players who spent so much on the social casino games that they could not afford prescription medicine or that they faced foreclosure on their homes. [24]

101.    In the social casino world, "whales" are called "VIPs."  Zynga uses the "VIP" system to keep track of its big spenders and make sure that they keep spending money.

102.    Each user has a VIP status.  Users increase their VIP status primarily by making in-game purchases, which grant the user—in addition to coins to play the slot machines—VIP points.

103.    Zynga advertises VIP status as something desirable to the user.  VIP status comes with benefits such as extra coins from purchases and bonuses, exclusive VIP slot machines, and a dedicated account manager (described in more detail below).  These screenshots from Hit it Rich! outline how "it pays to be a VIP":

---

[23] Kyle Langvardt, *Regulating Habit-Forming Technology*, 88 Fordham L. Rev. 129, 140 (2019), available at: https://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=5619&context=flr

[24] Nate Halverson, *How Social Casinos Leverage Facebook User Data to Target Vulnerable Gamblers*, PBS News Hour (Aug. 13, 2019), https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers#:~:text=Whyte%20said%20their%20helpline%20is,more%20addictive%20than%20traditional%20casinos.





104.    Here are screenshots of the VIP rooms in Hit it Rich! and Black Diamond Casino, with exclusive slot machines that can be played only upon obtaining high enough VIP status:





105.   But the real purpose of the VIP system is to provide Zynga with an easy way to track how much users are spending in the Zynga Social Slots Games and target players who have a high spending potential.

106.   Indeed, each dollar that a user spends on in-game purchases corresponds nearly exactly to 100 VIP points.  For example, if a user spends $1.99, the user receives 200 VIP points. If the user spends $99.99, the user receives 10,000 VIP points.  This makes it very easy for Zynga to keep track of exactly how much each of its users is spending on the Zynga Social Slots Games.

First Amended Class Action Complaint                                    Case No. 3:21-cv-01427-LB

107.    Moreover, through Zynga's "Loyalty Lounge," users can link their VIP points across all of the Zynga Social Slots Games—and receive awards for doing so—allowing Zynga to easily track users' total spending across all of the Zynga Social Slots Games.  Thus, if a high-spending VIP starts playing a new social slots game, Zynga knows the user is a target from the beginning.  For example, here is a screenshot prompting the user to join the Loyalty Lounge in Hit it Rich!:



108.    When the user reaches a high enough VIP status, Zynga assigns the user a dedicated VIP Account Manager.  The VIP Account Manager's primary objective is to contact users who have spent a lot of money at the Zynga Social Slots Games, retain those users, and draw those who have stopped playing back into the game to spend more money.

109.    Zynga's job posting for its role of VIP Account Manager makes this explicit: "The (VIP Account Manager) will be responsible for working in social gaming (retaining, reactivating VIP Players).   Developing new VIP customers, increasing player lifetime value and revenue contribution for assigned VIP customers."  "The Account Manager will be responsible for cultivating and developing relationships and serves as a trusted consultant to our most financially invested and players in his / her VIP base by reaching more than 110 contacts a day

First Amended Class Action Complaint                                    Case No. 3:21-cv-01427-LB

via phone/email." [25]

110.    The PBS report cited above describes the relationship between the user who lost $400,000 at a similar social casino game and her VIP manager: "the first time she tried to quit, Big Fish called her on the phone, not to cancel her account, but to assign her a personal VIP host, Byron Scott, who gave her free chips to keep her from leaving."  As the user herself describes it: "This was a daily thing, back and forth.  It was like a friendship.  And you know, my mother passed away in 2016.  They sent me flowers.  And they also sent, of course, chips to keep me playing." [26]

111.    But Zynga monitors more than just the players who are already addicted and who have already spent lots of money.  Zynga also seeks out and targets users who have tendencies that make them likely to *become* addicted and spend exorbitant amounts of money on in-game purchases.

112.    The PBS report describes how "[s]ocial casinos now use behavioral analysis software to quickly identify people who are likely to become big spenders.  Behaviors like increasing your bet, or playing frequently, are signals to the companies, and they target these players with heavy marketing, and label them, proto-whales[.]"  The company at issue in that report "tracks players by their Facebook IDs, closely monitors their game play, and then prods people to keep them spending." [27]

113.    Zynga does the same thing.  In its own words, Zynga collects—in addition to other information about users—"Commercial information, such as products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies." [28]

114.    Zynga collects this and other personal information not only from the users' in-game activity, but also from social network services like Facebook.  As Zynga describes: "If you play Zynga's games or access any of our other Services on connected third-party applications or

---

[25] Zynga, *German VIP Account Manager*, https://www.zynga.com/job-listing/vip-account-manager/ (last visited Feb. 22, 2021).
[26] Halverson, *supra*.
[27] *Id*.
[28] Zynga, *CA Notice*, https://www.zynga.com/privacy/ca-notice/

connect our Services to any third-party applications, including social networks like Facebook,
Zynga may receive certain information about you from the provider of the third-party
application."  The information Zynga collects from social networks includes:

- "your first and last name;

- your profile picture or its URL;

- your user identification number (like your Facebook ID number), which may be
  linked to publicly-available information like your name and profile photo;

- your friends' user ID numbers and other public data;

- the e-mail address you provided to that third-party application;

- your approximate physical location and that of the devices you use to access our
  Services;

- your gender;

- your birthday, age, and/or age range;

- information about your activities on or through the connected third-party
  application;

- other publicly-available information on the third-party application; and/or

- any other information that you or the provider of the third-party application share
  with Zynga." [29]

115.    Zynga uses this information that it collects from its games and from social
networks for, among other things, "Player acquisition," "Direct marketing (phone, email, etc.),"
and "Advertising." [30]  In other words, Zynga collects personal information to identify people
with addictive tendencies, get them hooked on Zynga's games, and target them with direct
marketing to induce them to make in-game purchases.

116.    To acquire this information, Zynga offers users free coins and other incentives to
link their accounts to Facebook.  For example, here is a screenshot from the Black Diamond

---

[29] Zynga, *Privacy Policy*, https://www.zynga.com/privacy/policy
[30] Zynga, *CA Notice*, https://www.zynga.com/privacy/ca-notice/

43

1  Casino support page listing the benefits of connecting to Facebook:



**Why should I Facebook connect?**

Connecting to Facebook is one of the most powerful actions you can perform as a Black Diamond VIP.

To get the most out of Black Diamond, simply press the "Facebook Connect" button and you'll:
- Get a Free coins bonus straight away.
- Save your game status across multiple devices, and never lose your data.
- Compete in Leader board challenges.
- Gain exclusive invitations to Black Diamond celebrity events.
- Exchange gifts with your friends!

Last Updated: 939d • Permalink

117.    In sum, not only does Zynga specifically design the Zynga Social Slots Games to be as addictive as possible generally; it also goes to great lengths to identify those users that Zynga knows are, in fact, addicted (or likely to become addicted) to its games.  And instead of trying to help those users deal with their addiction—e.g. by cutting them off, referring them to counseling, or providing addiction resources to them—Zynga does everything in its power to make sure those users remain addicted and spend as much as possible on its slot machines— often with financially ruinous consequences.

**5.    Zynga intentionally and unfairly uses microtransactions and virtual coins to mask the fact that the user is paying money to play.**

118.    Through "microtransactions" on the Zynga Social Slots Games, users exchange relatively small amounts of money for large amounts of coins, which users then use to bet on virtual slot machines.  This intermediate step of converting money into virtual coins before betting at Zynga's slot machines serves at least two purposes.

119.    First, the relatively small nature of individual microtransactions masks the fact that, in the aggregate, repeated transactions can result in colossal profits for Zynga—and financial ruin for its users.  From the user's perspective, most individual purchases, taken alone, are not substantial sums of money—certainly not something that would place the user in financial jeopardy.  Breaking up each user's total payments into relatively small individual transactions makes it difficult for the user to see and internalize how much he or she is spending

44

1  on Zynga's social slots games.

2        120.    For example, Plaintiff Michael Owens initially estimated that he spent about

3  $3,000 on Zynga's Wizard of Oz Slots between May 12, 2020 and January 10, 2021.  In reality,

4  he had spent over $8,000.

5        121.    Second, using virtual coins—rather than money—as the in-game currency, and

6  distorting the value of those virtual coins, distracts the user from the fact that he or she is actually

7  spending real money to place bets within the Zynga Social Slots Games.  This is the same reason

8  that casinos make their patrons exchange money for chips to gamble at the casino games—

9  psychologically, it is easier to part with chips than with cash, even though the chips must be

10  purchased with cash.  Game designer Ramin Shokrizade explains this aspect of "coercive

11  monetization":

12        A coercive monetization model depends on the ability to "trick" a person into
        making a purchase with incomplete information, or by hiding that information
13        such that while it is technically available, the brain of the consumer does not
        access that information.  Hiding a purchase can be as simple as disguising the
14        relationship between the action and the cost as I describe in my Systems of
        Control in F2P paper.
15

16        Research has shown that putting even one intermediate currency between the
        consumer and real money, such as a "game gem" (premium currency), makes the
17        consumer much less adept at assessing the value of the transaction.
        …
18        To maximize the efficacy of a coercive monetization model, you *must* use a
19        premium currency, ideally with the ability to purchase said currency in-app.
        Making the consumer exit the game to make a purchase gives the target's brain
20        more time to figure out what you are up to, lowering your chances of a sale.  If
        you can set up your game to allow "one button conversion", such as in many iOS
21        games, then obviously this is ideal.  The same effect is seen in real world retail
22        stores where people buying goods with cash tend to spend less than those buying
        with credit cards, due to the layering effect.
23        …
        Having the user see their amount of premium currency in the interface is also
24        much less anxiety generating, compared to seeing a real money balance.  If real
25        money was used (no successful game developer does this) then the consumer
        would see their money going down as they play and become apprehensive.  This

26

27

28

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

gives the consumer more opportunities to think and will reduce revenues. [31]

122.   In the Zynga Social Slots Games, after the user converts money to coins, everything is in terms of coins, not money.  The user's balance is represented by the number of coins possessed, not the amount of money invested.  And when the user bets, loses, and/or wins at Zynga's slot machine, the user is betting, losing, and/or winning virtual coins, not money.

123.   Psychologically, this makes it easier for the user to spin and spin, dwindling his or her coin supply, without feeling like he or she is losing money—even though the user may have purchased those coins with money.

124.   Moreover, Zynga intentionally makes it extremely difficult—if not impossible—for users to value virtual coins in terms of money.  Zynga distorts the value of virtual coins through inflation.  While users spend hundreds of dollars at most on each purchase, they buy, wager, lose, and win coins on the scale of thousands, millions, or even billions.  For example, as shown below, in the Hit it Rich! store, users can purchase 9,450,000 coins for $2.99 or 51,750,000 coins for $14.99.  There is no obvious dollar-to-coin ratio in either of these exchanges, and the ratios are different in each purchase.  The free coins that users receive from periodic bonuses and other mechanisms also distort the ratio, making it impossible for the user to calculate how much they are betting in real dollar terms.

---

[31] Ramin Shokrizade, *The Top F2P Monetization Tricks*, Gamasutra (June 26, 2013), https://www.gamasutra.com/blogs/RaminShokrizade/20130626/194933/The_Top_F2P_Monetization_Tricks.php

1



2

3

4

5

6

7

8

9

10

11   125.   Zynga's practice of distorting the monetary value of coins makes the "coercive

12   monetization" even more potent than in a casino, where each chip has a clear monetary value.

13   126.   In sum, to increase spending on its social slot games, Zynga uses every trick in

14   the book to disguise the real amount of money that users are spending playing the game.  This is

15   specifically designed to trick users into spending more than they otherwise would on the game.

16   **6.      Zynga fraudulently markets the Zynga Social Slots Games as legal video**

17   **games and does not disclose that they are in fact illegal slot machines.**

18   127.   From Zynga's representations, marketing, and advertisements, a reasonable

19   consumer would likely be misled to believe that the Zynga Social Slots Games—and the virtual

20   slot machines contained within—are legal video games that merely simulate gambling, rather

21   than slot machines that constitute illegal gambling under California law.

22   128.   For example, in the support page of each of the Zynga Social Slots Games, Zynga

23   tells its users that its games do not offer real-money, or "actual" gambling.  For example:

24   "Black Diamond Casino does not offer actual gambling.  All the money in it is
25   meant for entertainment only and cannot be cashed out.  The coins that you

26

27

28

47

purchase are for opening higher level machines, and increasing your playtime." [32]

"While we strive for an authentic Casino experience, our games are strictly for entertainment purposes.  All coins used in our Casino are intended only for fun and cannot be cashed out.  Purchasing coins allow players to advance further in the Casino to higher-level machines and to play longer." [33]

129.    The support pages for Hit it Rich!, Willy Wonka Slots, and Wizard of Oz Slots contain statements nearly identical to the statement on the Game of Thrones Slots support page. The support pages for the other Zynga Social Slots Games contained nearly identical statements when they were active.  These statements have been on the support pages for the Zynga Social Slots Games for the entire period beginning four years before the filing of this Complaint, or since Zynga made the games available.

130.    Similar statements appear on the download pages of the Zynga Social Slots Games in the Google Play Store and the Apple App Store.  These download pages state:

"This game is intended for an adult audience and does not offer real money gambling or an opportunity to win real money or prizes.  Practice or success at social gaming does not imply future success at real money gambling." [34]

"This game is intended for an adult audience and does not offer real money gambling or an opportunity to win real money or prizes.  Practice or success at social gaming does not imply future success at real money gambling." [35]

"This slot machine game is intended for an adult audience and does not offer real money gambling or an opportunity to win real money or prizes.  Practice or

---

[32] *Can I Win Real Money?*, Black Diamond Casino Support Page, https://zyngasupport.helpshift.com/a/game-of-thrones-slots-casino/?s=getting-started&f=can-i-win-real-money&l=en (last visited Feb. 22, 2021)

[33] *Can I Win Real Money?*, Game of Thrones Slots Support Page, https://zyngasupport.helpshift.com/a/game-of-thrones-slots-casino/?s=getting-started&f=can-i-win-real-money&l=en (last visited Feb. 22, 2021)

[34] *Wizard of Oz Free Slots Casino*, Google Play Store, https://play.google.com/store/apps/details?id=com.zynga.wizardofoz&hl=en_US&gl=US (last visited Feb. 24, 2020).  An identical statement appears on the download page of Wizard of Oz Slots on the Apple App Store.

[35] *Hit it Rich! Lucky Vegas Casino Slot Machine Game*, Google Play Store, https://play.google.com/store/apps/details?id=com.zynga.hititrich&hl=en_US&gl=US (last visited Feb. 24, 2020).  An identical statement appears on the download page of Hit it Rich! on the Apple App Store.

First Amended Class Action Complaint                     Case No. 3:21-cv-01427-LB

success at social gaming does not imply future success at real money gambling." [36]

"• The games are intended for an adult audience.
• The games do not offer 'real money gambling' or an opportunity to win real money or prizes.
• Practice or success at social casino gaming does not imply future success at real money gambling." [37]

131.    While this disclaimer is omitted on the Game of Thrones Slots download page, Zynga included a nearly identical disclaimer on the game's webpage on Zynga's website:

"The games are intended for an adult audience. The games do not offer 'real money gambling' or an opportunity to win real money or prizes.  Practice or success at social casino gaming does not imply future success at 'real money gambling.'" [38]

132.    These statements have been on these pages for the Zynga Social Slots Games for the entire period beginning four years before the filing of this Complaint, or since Zynga made the games available.  Moreover, identical or nearly identical statements appeared on the webpages and download pages for Zynga's discontinued social slots games while those games were active.

133.    These statements would lead a reasonable consumer to believe that nothing of value can be won at Zynga's virtual slot machines, and that virtual slot machines are not illegal gambling devices.  But, for the reasons described above, the coins that users can win at Zynga's virtual slot machines *are* things of value under California Penal Code Section 330b, and the games *are* illegal slot machines under the same provision.  Accordingly, each of the statements identified above was and is false or misleading.

---

[36] *Willy Wonka Slots Free Casino*, Google Play Store, https://play.google.com/store/apps/details?id=com.zynga.wonka (last visited Feb. 24, 2020).  An identical statement appears on the download page of Willy Wonka Slots on the Apple App Store.
[37] *SLOTS – Black Diamond Casino*, Google Play Store, https://play.google.com/store/apps/details?id=com.risingtidegames.blackdiamondslots.beta (last visited Feb. 24, 2020).  An identical statement appears on the download page of Black Diamond Casino on the Apple App Store.
[38] Game of Thrones Slots Casino, https://www.gotslotscasino.zynga.com/ (last visited Feb. 22, 2021).

134.     Moreover, Zynga knows or is willfully blind to the fact that its statements were false or misleading.  Indeed, Zynga employs many attorneys and is aware of the gambling laws in the jurisdictions in which it operates, including the gambling laws of California, where it is headquartered.  Moreover, Zynga and its attorneys have specifically analyzed the legality of the Zynga Social Slots Games.  Indeed, in its financial statements, Zynga expressly discusses laws that prohibit gambling and cases applying those laws, which demonstrates that Zynga keeps abreast of the legality of the Zynga Social Slots Games. [39]  Accordingly, Zynga was on notice that the Zynga Social Slots Games were potentially subject to California's anti-gambling laws, including California Penal Code § 330b.  Zynga and its legal team performed an analysis of this law and concluded that each of the Zynga Social Slots Games constituted or contained an illegal slot machine under this section of the penal code, but made knowingly false or misleading statements to the contrary anyway.  Alternatively, Zynga knew and understood that there was a high probability that the Zynga Social Slots Games were illegal, but avoided performing an analysis of this specifically because it did not want to find out the answer, and then made statements that its games were legal knowing that there was a high probability that those statements were false and with reckless disregard for their falsity.

135.     Zynga also represents that the Zynga Social Slots games are lawful games of skill, when in reality they are unlawful games of chance.

136.     For example, Zynga represents to users that they can influence the outcome of the slot machines by manually stopping the reels from spinning at the right time, either by pressing the "SPIN" button again before the reels stop spinning or by pressing the "STOP" button that appears when the reels begin spinning.  Including this functionality would lead a reasonable user to believe that, by stopping the reels at the right time, the user can increase his or her chance of winning.  In reality, stopping the reels from spinning early does not impact a user's chance of winning at all.  Here are screenshots of "STOP" buttons in Hit it Rich!, Black Diamond Casino, and Game of Thrones Slots, respectively:

---

[39] *See, e.g.*, Form 10K at 18.

First Amended Class Action Complaint                                    Case No. 3:21-cv-01427-LB





First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB



137.   Here are screenshots of instructions explaining that pressing the SPIN button again will stop the reels from spinning early:



First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

1
2
3
4
5
6
7
8
9
10



11    138.    Zynga also includes features in the Zynga Social Slots Games that are often
12 present in games of skill or strategy, such as increasing a user's level, daily challenges or
13 "quests," and competitions among players.  But none of these features involve any skill or
14 experience whatsoever on the part of the user.  Rather, these features are entirely dependent upon
15 how many times the user spins, how much the user bets, and how much the user wins.

16    139.    Zynga knows that the Zynga Social Slots Games involve no skill whatsoever and
17 are instead entirely based on chance.  Indeed, Zynga makes and develops the Zynga Social Slots
18 Games and knows how they work.  Moreover, as alleged above, in describing the Zynga Social
19 Slots Games, Zynga acknowledges that they involve no skill whatsoever.

20    140.    In sum, Zynga falsely represents that its games are legal games of skill, when in
21 fact they are unlawful gambling.  Zynga does this to deceive law-abiding consumers to play its
22 illegal games.  Zynga also does this to trick consumers into thinking that they can increase their
23 chances of winning through skill, when in fact they cannot.

24 **D.    Zynga's business acts in developing, owning, operating, marketing, and profiting**
25 **from the Zynga Social Slots Games violate California's Unfair Competition Law**
26 **regardless of where the users are located.**

27    141.    Zynga's Terms of Service that govern the use of the Zynga Social Slots Games
28 state that, for users located in the United States, "these Terms and our relationship will be

53

1  governed by California law, except for its conflicts of laws principles."

2       142.     Similarly, the Terms of Service state that, for users located in the United States,

3  "judicial proceedings (other than small claims actions) that are excluded from the Arbitration

4  Agreement in Section 15 must be brought in state or federal court in San Francisco, California,

5  unless the parties agree to some other location.  You, Zynga, and the Zynga Corporate Family all

6  consent to venue and personal jurisdiction in San Francisco, California."

7       143.     Moreover, Zynga's violations of California's Unfair Competition Law occurred in

8  and emanated from California.  Zynga has its headquarters and two other offices in California.

9  Zynga owns and operates its social slots games from its headquarters in California.  The decision

10  to create, develop, and market Zynga's social slots games was, in significant part, conceived of,

11  reviewed, and made in California.  All of Zynga's top executives lived and worked in California,

12  including its Chief Executive Officer, its President, its Chief Financial Officer, its Chief

13  Operating Officer, its Chief Legal Officer, and its Chief People Officer.  Zynga's social slots

14  games were, in significant part, conceived of, prepared, developed, coordinated, reviewed,

15  approved, and manufactured in California.  A substantial number of Zynga's software engineers,

16  artists, product managers, and producers lived and worked in California and developed,

17  coordinated, reviewed, approved, and manufactured Zynga's social slots games.  Zynga's social

18  slots games were, in significant part, advertised and marketed in and from California.  A

19  substantial number of members of Zynga's marketing team lived and worked in California and

20  marketed Zynga's social slots games.  Other key actors for Zynga's social slots games lived and

21  worked in California, including Zynga's Senior Vice President of Social Casino and Casual

22  Games.

23       144.     Moreover, a substantial number of putative class members reside in California.

24       145.     Accordingly, Zynga's conduct is governed by California law, and each of its acts

25  in connection with its social slot games constitute unlawful, unfair, and/or fraudulent business

26  acts that are prohibited under California's Unfair Competition Law.

27                    **Plaintiffs' Allegations**

28

First Amended Class Action Complaint               Case No. 3:21-cv-01427-LB

**A.      Michael Owens**

146.      Plaintiff Michael Owens downloaded Zynga's Wizard of Oz Slots slot machine game from the Google Play Store using his current Google account on his Android phone in or around May, 2020.   Additionally, Mr. Owens had previously downloaded Zynga's Wizard of Oz Slots slot machine game on other devices and/or using other email accounts.

147.      Initially, Zynga gave Mr. Owens free coins that permitted him to spin the slot machines.  Mr. Owens spent all of those free coins.  Mr. Owens began purchasing coins to be able to continue spinning.

148.      Mr. Owens purchased coins to continue playing the Wizard of Oz Slots slot machine game at least as early as May 12, 2020.  From that date until January 10, 2021, Mr. Owens lost over $8,000 purchasing coins with which to operate Zynga's Wizard of Oz Slots slot machines from Zynga, through the Google Play Store.

149.      Mr. Owens used the coins he purchased to make bets on, and "spin," slot machines in Zynga's Wizard of Oz Slots slot machine game.

150.      Mr. Owens linked his Wizard of Oz Slots account to his Facebook account in order to acquire the coin incentive offered by Zynga.  Zynga collected personal information about Mr. Owens from these accounts.  As alleged above, Zynga uses this information to identify users with a high spending potential, target them with direct marketing, and induce them to make purchases of coins in its social slots games.

151.      When Mr. Owens downloaded Wizard of Oz Slots, the download page for Wizard of Oz Slots stated: "This game is intended for an adult audience and does not offer real money gambling or an opportunity to win real money or prizes.  Practice or success at social gaming does not imply future success at real money gambling."

152.      Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, including the above statement, Mr. Owens believed that Wizard of Oz Slots was a legal video game, not an illegal slot machine.

153.      Mr. Owens would not have spent money at Wizard of Oz Slots if, before downloading and playing the game, Mr. Owens had known that it and its virtual slot machines

55

were illegal slot machines under California law.

154.   Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, when he began playing the game, Mr. Owens believed that Wizard of Oz Slots involved skill.  For example, Mr. Owens believed that he could influence the outcome of each spin by performing a "Fast Stop" and stopping the reels from spinning at the right time.  This played a part in influencing Mr. Owens to play the game.

**B.    Jennie Plumley**

155.   Plaintiff Jennie Plumley downloaded Zynga's Game of Thrones Slots Casino slot machine game from the Google Play Store on her Android phone in or around April, 2020.  Ms. Plumley deleted the game after a couple months, but reinstalled it after her husband was diagnosed with terminal cancer in June of 2020.  Unable to sleep well at night, Ms. Plumley would stay awake playing Zynga's Game of Thrones Slots Casino.  Ms. Plumley also downloaded and played Zynga's Black Diamond Casino slot machine game in or around October, 2020.

156.   Initially, Zynga gave Ms. Plumley free coins that permitted her to spin the slot machines.  Ms. Plumley spent all of those free coins.  Ms. Plumley began purchasing coins to be able to continue spinning.

157.   Ms. Plumley purchased coins to continue playing the Zynga Social Slots Games at least as early as April 7, 2020.  In the eleventh-month period from that date until March 8, 2021, Ms. Plumley lost over $340,000 purchasing coins from Zynga with which to operate Zynga's Game of Thrones Slots Casino slot machines.  Ms. Plumley also lost $9.98 purchasing coins from Zynga with which to operate Zynga's Black Diamond Slots Casino slot machines in October, 2020.

158.   Between April 7, 2020, and March 8, 2021, Ms. Plumley's purchases on the Zynga Social Slots Games averaged over $1,000 per day.  Some days, she lost much more.  For example, on November 10, 2020, Ms. Plumley made twenty-six payments of $399.99 and two payments of $199.99, for a total of $10,799.72 in a single day.  Here are portions of Ms. Plumley's Google Play payment history showing Ms. Plumley's payments on November 10,

56

2020:

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

| | | | | |
|---|---|---|---|---|
| Coin Package 200 | $199.99 | Nov 10, 2020 | Apps | Report a problem |
| Coin Package 400 | $399.99 | Nov 10, 2020 | Apps | Report a problem |
| Coin Package 400 | $399.99 | Nov 10, 2020 | Apps | Report a problem |
| Coin Package 400 | $399.99 | Nov 10, 2020 | Apps | Report a problem |
| Coin Package 400 | $399.99 | Nov 10, 2020 | Apps | Report a problem |
| Coin Package 400 | $399.99 | Nov 10, 2020 | Apps | Report a problem |
| Coin Package 400 | $399.99 | Nov 10, 2020 | Apps | Report a problem |
| Coin Package 400 | $399.99 | Nov 10, 2020 | Apps | Report a problem |

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



159.    After Ms. Plumley had spent a sufficient amount of money on the Zynga Social Slots Games, she attained a VIP status level and Zynga assigned her a VIP Account Manager.

160.    Ms. Plumley used the coins she purchased to make bets on, and "spin," slot machines in the Zynga Social Slots Games.

161.    Ms. Plumley linked her Zynga Social Slots Games accounts to her Facebook account in order to acquire the coin incentive offered by Zynga.  Zynga collected personal information about Ms. Plumley from these accounts.  As alleged above, Zynga uses this

59

1    information to identify users with a high spending potential, target them with direct marketing,

2    and induce them to make purchases of coins in its social slots games.

3            162.    When Ms. Plumley downloaded Game of Thrones Slots Casino, the webpage for

4    the game on Zynga's website stated: "The games are intended for an adult audience.  The games

5    do not offer 'real money gambling' or an opportunity to win real money or prizes.  Practice or

6    success at social casino gaming does not imply future success at 'real money gambling.'"

7            163.    When Ms. Plumley downloaded Black Diamond Casino, the download page for

8    Black Diamond Casino stated:

9            "• The games are intended for an adult audience.
             • The games do not offer 'real money gambling' or an opportunity to win real

10           money or prizes.
             • Practice or success at social casino gaming does not imply future success at real

11           money gambling."

12           164.    Based on Zynga's marketing and representations regarding the Zynga Social Slots

13   Games, including the above statements, Ms. Plumley believed that the Zynga Social Slots Games

14   were legal video games, not illegal slot machines.

15           165.    Ms. Plumley would not have spent money at the Zynga Social Slots Games if,

16   before downloading and playing the games, Ms. Plumley had known that the games and their

17   virtual slot machines were illegal slot machines under California law.

18           166.    Based on Zynga's marketing and representations regarding the Zynga Social Slots

19   Games, when she began playing the games, Ms. Plumley believed that the Zynga Social Slots

20   Games involved skill.  For example, Ms. Plumley believed that she could influence the outcome

21   of each spin by performing a "Fast Stop" and stopping the reels from spinning at the right time.

22   This played a part in influencing Ms. Plumley to play the games.

23   **C.    Jon Schweitzer**

24           167.    Plaintiff Jon Schweitzer began playing Zynga's Game of Thrones Slots Casino

25   slot machine game in or around March, 2020.

26           168.    Initially, Zynga gave Mr. Schweitzer free coins that permitted him to spin the slot

27   machines.  Mr. Schweitzer spent all of those free coins.  Mr. Schweitzer began purchasing coins

28   to be able to continue spinning.

169.    Mr. Schweitzer purchased coins to continue playing the Game of Thrones Slots Casino slot machine game.  Since the time he began playing, Mr. Schweitzer has lost over $350,000 purchasing coins from Zynga with which to operate Zynga's Game of Thrones Slots Casino slot machines.  Mr. Schweitzer recently moved from California to Florida.  He purchased coins from Zynga both while in California and while in Florida.  He made the majority of his purchases while in California.

170.    After Mr. Schweitzer had spent a sufficient amount of money on Game of Thrones Slots Casino, he attained a VIP status level and Zynga assigned him a VIP Account Manager.

171.    When he began playing, Mr. Schweitzer made most of his coin purchases through the Apple App Store, which had a maximum purchase limit of $99.99.  After Zynga became aware that Mr. Schweitzer was spending a great deal of money on Game of Thrones Slots Casino, Mr. Schweitzer's VIP Account Manager informed Mr. Schweitzer that he could get more coins for his money if he made purchases directly through Zynga's website, which had a much higher spending limit.  Mr. Schweitzer then made most of his coin purchases directly through Zynga, for amounts well above the $99.99 limit on the Apple App Store.

172.    Mr. Schweitzer's addiction to Zynga's Game of Thrones Slots Casino caused Mr. Schweitzer to reach the credit limits on his credit cards, ruin his good credit score, burn through his entire savings, and take out a large personal loan to be able to continue purchasing coins and playing Game of Thrones Slots Casino.  Mr. Schweitzer's addiction caused him to reach out to his VIP Account Manager at Zynga and beg for free coins because he felt he could not afford to purchase more.  Mr. Schweitzer's VIP Account Manager offered Mr. Schweitzer free coins to keep spinning, as well as discounts and coin-match deals for future purchases.  Mr. Schweitzer is now engaged in a Chapter 13 bankruptcy proceeding as a direct result of spending all of his money and accruing massive debt playing Zynga's Game of Thrones Slots Casino.

173.    Mr. Schweitzer used the coins he purchased to make bets on, and "spin," slot machines in Zynga's Game of Thrones Slots Casino slot machine game.

174.    Mr. Schweitzer linked his Game of Throne Slots Casino account to his Facebook

61

account, and Zynga collected personal information about Mr. Schweitzer from these accounts. As alleged above, Zynga uses this information to identify users with a high spending potential, target them with direct marketing, and induce them to make purchases of coins in its social slots games.

175.    When Mr. Schweitzer began playing Game of Thrones Slots Casino, the webpage for the game on Zynga's website stated: "The games are intended for an adult audience.  The games do not offer 'real money gambling' or an opportunity to win real money or prizes. Practice or success at social casino gaming does not imply future success at 'real money gambling.'"

176.    Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, including the above statement, Mr. Schweitzer believed that Game of Thrones Slots Casino was a legal video game, not an illegal slot machine.

177.    Mr. Schweitzer would not have spent money at Game of Thrones Slots Casino if, before downloading and playing the game, Mr. Schweitzer had known that it and its virtual slot machines were illegal slot machines under California law.

178.    Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, when he began playing the game, Mr. Schweitzer believed that Game of Thrones Slots Casino involved skill.  For example, Mr. Schweitzer believed that he could influence the outcome of each spin by performing a "Fast Stop" and stopping the reels from spinning at the right time.  This played a part in influencing Mr. Schweitzer to play the game.

**D.    Charlie Finlay**

179.    Plaintiff Charlie Finlay began playing Zynga's Game of Thrones Slots Casino slot machine game in or around February, 2020.  Mr. Finlay began playing Game of Thrones Slots Casino while recovering from multiple surgeries for skin cancer.  Mr. Finlay was largely isolated at home during this time because of the surgeries and the emerging COVID-19 pandemic.

180.    Initially, Zynga gave Mr. Finlay free coins that permitted him to spin the slot machines.  Mr. Finlay spent all of those free coins.  Mr. Finlay began purchasing coins to be able to continue spinning.

181.     Mr. Finlay purchased coins to continue playing the Game of Thrones Slots Casino slot machine game at least as early as February 25, 2020.  In the four-month period between that date until June 23, 2020, Mr. Finlay lost over $200,000 purchasing coins from Zynga with which to operate Zynga's Game of Thrones Slots Casino slot machines.

182.     During this time period, Mr. Finlay's payments averaged over $1,600 per day. Some days, he lost much more.  For example, on March 19, 2020, Mr. Finlay made forty-eight payments of $99.99 on Game of Thrones Slots Casino, for a total of $4,799.52 in a single day. Mr. Finlay often made $99.99 payments within five minutes of one another.  Here are portions of Mr. Finlay's payment history showing Mr. Finlay's payments on March 19, 2020:

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 06:55:17 -0700 PDT | | **Transaction Date** | 2020-03-19 11:08:19 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667569529 | | **Third Party Receipt Id** | 20000667656861 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 07:17:40 -0700 PDT | | **Transaction Date** | 2020-03-19 11:12:25 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667576523 | | **Third Party Receipt Id** | 20000667658004 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 08:09:04 -0700 PDT | | **Transaction Date** | 2020-03-19 11:19:01 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667592806 | | **Third Party Receipt Id** | 20000667659836 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 09:30:56 -0700 PDT | | **Transaction Date** | 2020-03-19 11:19:23 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667623289 | | **Third Party Receipt Id** | 20000667659910 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 10:59:23 -0700 PDT | | **Transaction Date** | 2020-03-19 12:33:41 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667654406 | | **Third Party Receipt Id** | 20000667680936 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 11:01:07 -0700 PDT | | **Transaction Date** | 2020-03-19 12:37:53 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667654920 | | **Third Party Receipt Id** | 20000667682086 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

64

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

| Transaction Date | 2020-03-19 12:42:12 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667683243 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:07:18 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667689573 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:09:21 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667690061 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:10:14 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667690258 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:10:36 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667690389 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:12:21 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667690760 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:28:52 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667694572 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:31:46 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667695222 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:34:48 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667695860 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:48:36 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667699156 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 13:56:29 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667701228 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

| Transaction Date | 2020-03-19 14:01:53 -0700 PDT |
| --- | --- |
| Game Name | Game of Thrones Slots |
| Amount | 99.9900 |
| Currency Code | USD |
| Third Party Receipt Id | 20000667702321 |
| Item Name | Item from Game of Thrones Slots |
| Third Party Provider | ios |

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

| | |
|---|---|
| **Transaction Date** 2020-03-19 14:04:50 -0700 PDT | **Transaction Date** 2020-03-19 14:55:49 -0700 PDT |
| **Game Name** Game of Thrones Slots | **Game Name** Game of Thrones Slots |
| **Amount** 99.9900 | **Amount** 99.9900 |
| **Currency Code** USD | **Currency Code** USD |
| **Third Party Receipt Id** 20000667702971 | **Third Party Receipt Id** 20000667714920 |
| **Item Name** Item from Game of Thrones Slots | **Item Name** Item from Game of Thrones Slots |
| **Third Party Provider** ios | **Third Party Provider** ios |

| | |
|---|---|
| **Transaction Date** 2020-03-19 14:13:21 -0700 PDT | **Transaction Date** 2020-03-19 16:22:44 -0700 PDT |
| **Game Name** Game of Thrones Slots | **Game Name** Game of Thrones Slots |
| **Amount** 99.9900 | **Amount** 99.9900 |
| **Currency Code** USD | **Currency Code** USD |
| **Third Party Receipt Id** 20000667705028 | **Third Party Receipt Id** 20000667736029 |
| **Item Name** Item from Game of Thrones Slots | **Item Name** Item from Game of Thrones Slots |
| **Third Party Provider** ios | **Third Party Provider** ios |

| | |
|---|---|
| **Transaction Date** 2020-03-19 14:26:08 -0700 PDT | **Transaction Date** 2020-03-19 16:24:44 -0700 PDT |
| **Game Name** Game of Thrones Slots | **Game Name** Game of Thrones Slots |
| **Amount** 99.9900 | **Amount** 99.9900 |
| **Currency Code** USD | **Currency Code** USD |
| **Third Party Receipt Id** 20000667707974 | **Third Party Receipt Id** 20000667736582 |
| **Item Name** Item from Game of Thrones Slots | **Item Name** Item from Game of Thrones Slots |
| **Third Party Provider** ios | **Third Party Provider** ios |

| | |
|---|---|
| **Transaction Date** 2020-03-19 14:34:36 -0700 PDT | **Transaction Date** 2020-03-19 16:59:43 -0700 PDT |
| **Game Name** Game of Thrones Slots | **Game Name** Game of Thrones Slots |
| **Amount** 99.9900 | **Amount** 99.9900 |
| **Currency Code** USD | **Currency Code** USD |
| **Third Party Receipt Id** 20000667709710 | **Third Party Receipt Id** 20000667746672 |
| **Item Name** Item from Game of Thrones Slots | **Item Name** Item from Game of Thrones Slots |
| **Third Party Provider** ios | **Third Party Provider** ios |

| | |
|---|---|
| **Transaction Date** 2020-03-19 14:35:06 -0700 PDT | **Transaction Date** 2020-03-19 17:00:35 -0700 PDT |
| **Game Name** Game of Thrones Slots | **Game Name** Game of Thrones Slots |
| **Amount** 99.9900 | **Amount** 99.9900 |
| **Currency Code** USD | **Currency Code** USD |
| **Third Party Receipt Id** 20000667709845 | **Third Party Receipt Id** 20000667746935 |
| **Item Name** Item from Game of Thrones Slots | **Item Name** Item from Game of Thrones Slots |
| **Third Party Provider** ios | **Third Party Provider** ios |

| | |
|---|---|
| **Transaction Date** 2020-03-19 14:55:19 -0700 PDT | **Transaction Date** 2020-03-19 17:14:24 -0700 PDT |
| **Game Name** Game of Thrones Slots | **Game Name** Game of Thrones Slots |
| **Amount** 99.9900 | **Amount** 99.9900 |
| **Currency Code** USD | **Currency Code** USD |
| **Third Party Receipt Id** 20000667714828 | **Third Party Receipt Id** 20000667751180 |
| **Item Name** Item from Game of Thrones Slots | **Item Name** Item from Game of Thrones Slots |
| **Third Party Provider** ios | **Third Party Provider** ios |

66

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 17:15:04 -0700 PDT | | **Transaction Date** | 2020-03-19 19:40:12 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667751365 | | **Third Party Receipt Id** | 20000667793112 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 18:01:14 -0700 PDT | | **Transaction Date** | 2020-03-19 19:40:36 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667764492 | | **Third Party Receipt Id** | 20000667793199 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 18:08:21 -0700 PDT | | **Transaction Date** | 2020-03-19 20:04:07 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667766568 | | **Third Party Receipt Id** | 20000667799722 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 19:00:58 -0700 PDT | | **Transaction Date** | 2020-03-19 20:09:16 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667781868 | | **Third Party Receipt Id** | 20000667801168 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 19:04:28 -0700 PDT | | **Transaction Date** | 2020-03-19 21:14:09 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667783008 | | **Third Party Receipt Id** | 20000667819529 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

| | | | | |
|---|---|---|---|---|
| **Transaction Date** | 2020-03-19 19:38:54 -0700 PDT | | **Transaction Date** | 2020-03-19 21:24:06 -0700 PDT |
| **Game Name** | Game of Thrones Slots | | **Game Name** | Game of Thrones Slots |
| **Amount** | 99.9900 | | **Amount** | 99.9900 |
| **Currency Code** | USD | | **Currency Code** | USD |
| **Third Party Receipt Id** | 20000667792724 | | **Third Party Receipt Id** | 20000667822179 |
| **Item Name** | Item from Game of Thrones Slots | | **Item Name** | Item from Game of Thrones Slots |
| **Third Party Provider** | ios | | **Third Party Provider** | ios |

67

183.     After Mr. Finlay had spent a sufficient amount of money on Game of Thrones Slots Casino, he attained a VIP status level and Zynga assigned him a VIP Account Manager. Additionally, at Zynga's request, Mr. Finlay participated in a "focus group" in which Zynga employees, including Mr. Finlay's VIP Account Manager, asked him about which slot machines were his favorites and what factors compelled him to play those slot machines.  The purpose of this focus group was to identify factors that caused users to become addicted and spend more money so that Zynga could make its games even more addictive and profitable.

184.     Mr. Finlay is now experiencing financial distress as a direct result of Zynga's Game of Thrones Slots Casino.  Mr. Finlay's addiction to Zynga's Game of Thrones Slots Casino caused Mr. Finlay to reach the credit limits on his credit cards and spend a substantial portion of the money he had saved for his retirement.  As a result of the payments he made to Zynga, Mr. Finlay is having difficulty paying his mortgage, medical bills, and credit card bills. Mr. Finlay did not disclose to his partner how much he was spending on Zynga's Game of Thrones Slots Casino.

185.     Mr. Finlay used the coins he purchased to make bets on, and "spin," slot machines in Zynga's Game of Thrones Slots Casino slot machine game.

186.     Mr. Finlay linked his Game of Throne Slots Casino account to his Facebook account in order to acquire the coin incentive offered by Zynga.  Zynga collected personal information about Mr. Finlay from these accounts.  As alleged above, Zynga uses this information to identify users with a high spending potential, target them with direct marketing, and induce them to make purchases of coins in its social slots games.

187.     When Mr. Finlay began playing Game of Thrones Slots Casino, the webpage for the game on Zynga's website stated: "The games are intended for an adult audience.  The games do not offer 'real money gambling' or an opportunity to win real money or prizes.  Practice or success at social casino gaming does not imply future success at 'real money gambling.'"

188.     Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, including the above statement, Mr. Finlay believed that Game of Thrones Slots Casino was a legal video game, not an illegal slot machine.

189.    Mr. Finlay would not have spent money at Game of Thrones Slots Casino if, before downloading and playing the game, Mr. Finlay had known that it and its virtual slot machines were illegal slot machines under California law.

190.    Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, when he began playing the game, Mr. Finlay believed that Game of Thrones Slots Casino involved skill.  For example, Mr. Finlay believed that he could influence the outcome of each spin by performing a "Fast Stop" and stopping the reels from spinning at the right time. This played a part in influencing Mr. Finlay to play the game.

**E.    Melissa Irelan**

191.    Plaintiff Melissa Irelan began playing Zynga's social slots games in 2015 and stopped playing in December of 2017.  During that time, Ms. Irelan played and purchased coins on multiple of the Zynga Social Slots games, including Hit it Rich!, Black Diamond Casino, Wizard of Oz Slots, Willy Wonka Slots, and Princess Bride Slots.  She downloaded these games and made purchases through the Apple App Store on her Apple iPhone.

192.    Initially, Zynga gave Ms. Irelan free coins that permitted her to spin the slot machines.  Ms. Irelan spent all of those free coins.  Ms. Irelan began purchasing coins to be able to continue spinning.

193.    From the time she began playing until the time she stopped, Ms. Irelan lost over $40,000 purchasing coins with which to operate the slot machines in the Zynga Social Slots Games.  In December of 2017, Ms. Irelan lost $12.95 purchasing coins with which to operate Zynga's Hit it Rich! Slot machines.

194.    During the time Ms. Irelan was playing the Zynga Social Slots Games, she knew that her purchases were a problem, but she was unable to stop due to her addiction.  Ms. Irelan hid her purchases from her husband, who was not aware of the amount of money Ms. Irelan was spending on the Zynga Social Slots Games.  Ms. Irelan called her credit card companies, asking them to block the use of her credit cards for those games, but they did not do so.

After Ms. Irelan was finally able to stop playing the Zynga Social Slots Games, she received targeted ads telling her that she was missed and asking her to keep playing the games.

195.    Ms. Irelan used the coins she purchased to make bets on, and "spin," slot machines in the Zynga Social Slots Games.

196.    Zynga collected personal information about Ms. Irelan from her Zynga Social Slots Games accounts, as well as from any social media accounts that Ms. Irelan linked these accounts to.  As alleged above, Zynga uses this information to identify users with a high spending potential, target them with direct marketing, and induce them to make purchases of coins in its social slots games.

197.    When Ms. Irelan downloaded the Zynga Social Slots Games, the download page for each game contained a disclaimer stating that the games were intended for an adult audience, that the games did not offer "real money gambling" or an opportunity to win real money or prizes, and that practice or success at social casino gaming did not imply future success at "real money gambling."

198.    Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, including the above disclaimers, Ms. Irelan believed that the Zynga Social Slots Games were legal video games, not illegal slot machines.

199.    Ms. Irelan would not have spent money at the Zynga Social Slots Games if, before downloading and playing the games, Ms. Irelan had known that the games and their virtual slot machines were illegal slot machines under California law.

200.    Based on Zynga's marketing and representations regarding the Zynga Social Slots Games, when she began playing the games, Ms. Irelan believed that the Zynga Social Slots Games involved skill.  For example, Ms. Irelan believed that she could influence the outcome of each spin by performing a "Fast Stop" and stopping the reels from spinning at the right time. This played a part in influencing Ms. Irelan to play the games.

<u>**Class Action Allegations**</u>

**A.    The proposed class.**

201.    Plaintiffs bring this case on behalf of the proposed class of: All individuals who (1) purchased virtual "coins" and (2) used those "coins" to operate a slot machine in a Zynga Social Slots Game (3) in the United States.

70

---

202.    It is appropriate to include all such individuals in the same class, regardless of which of the Zynga Social Slots Games they played.  As relevant to the allegations in this case, the Zynga Social Slots Games all operate in the same manner.  Each of the Zynga Social Slots Games violates Cal. Penal Code § 330b for the same reasons.  And Zynga's business acts with respect to each of the Zynga Social Slots Games are unlawful, unfair, and fraudulent under California's Unfair Competition Law for the same reasons.  There are no conflicts of interests between these groups.

203.    The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Zynga, Zynga's subsidiaries, parents, successors, predecessors, and any entity in which Zynga or its parents have a controlling interest, and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Zynga's counsel and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**B.     The proposed class satisfies the numerosity requirement.**

204.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are hundreds of thousands if not millions of proposed class members.  Each of Zynga's social slots games have tens of thousands or hundreds of thousands of reviews on the Apple App Store and the Google Play Store, suggesting far more downloads.  And Zynga's financial reports indicate that Zynga has made approximately $800 million from sales of virtual coins in the Zynga Social Slots Games over the last four years.

**C.     The proposed class satisfies the commonality requirement.**

205.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include:

- Zynga's operation of the Zynga Social Slots Games.
- Whether the Zynga Social Slots Games are or include a "slot machine or device" within the meaning of Cal. Penal Code § 330b.

71

- Whether Zynga's acts with respect to the Zynga Social Slots Games are "business acts" within the meaning of California's Unfair Competition Law.
- Whether Zynga's acts with respect to the Zynga Social Slots Games are unlawful business acts or practices within the meaning of California's Unfair Competition Law.
- Whether Zynga's acts with respect to the Zynga Social Slots Games are unfair business acts or practices within the meaning of California's Unfair Competition Law.
- Whether Zynga's acts with respect to the Zynga Social Slots Games are fraudulent business acts or practices within the meaning of California's Unfair Competition Law.

**D.    Plaintiffs' claims are typical of those of the proposed class.**

206.    Plaintiffs' claims are typical of those of the proposed class.  Like the proposed class, Plaintiffs purchased virtual coins and used those coins to operate virtual slot machines in one or multiple of the Zynga Social Slots Games in the United States.  And as explained above, all of the Zynga Social Slots Games operate in the same manner, violate California Penal Code § 330b for the same reasons, and Zynga's acts with respect to each of the Zynga Social Slots Games constitute unfair, unlawful, and fraudulent business acts under California's Unfair Competition Law for the same reasons.  Plaintiffs allege the same violations of the California's Unfair Competition Law as the proposed class.  And Plaintiffs seek the same type of relief—restitution and a public injunction—as the proposed class.

**E.    Plaintiffs are adequate class representatives.**

207.    Plaintiffs will fairly and adequately protect the interests of the proposed class.  Plaintiffs' interests are aligned with the interests of the proposed class members: Plaintiffs seek restitution and an injunction for Zynga's violations of California's Unfair Competition Law.  Plaintiffs are represented by experienced class action counsel who are prepared to vigorously litigate this case through judgment and appeal.  There are no conflicts of interest between Plaintiffs and the class.

1    **F.      Final injunctive relief is appropriate respecting the class as a whole.**

2            208.    Zynga has acted on grounds that apply generally to the class: Zynga has

3    developed, owned, and operated the Zynga Social Slots Games, has sold coins, and has

4    undertaken unfair, unlawful, and fraudulent business acts with respect to the Zynga Social Slots

5    Games on grounds that apply generally to the class.  Accordingly, final injunctive relief

6    prohibiting Zynga from engaging in unfair, unlawful, and fraudulent business acts would apply

7    class-wide and is appropriate respecting the class as a whole.

8    **G.      Common questions of law and fact predominate, and a class action is a superior**

9            **method for the adjudication of this litigation.**

10           209.    The prosecution of separate actions by individual members of the proposed class

11   would create a risk of inconsistent or varying adjudication with respect to individual members,

12   which would establish incompatible standards for the parties opposing the class.  For example,

13   individual adjudication would create a risk that the same conduct by Zynga is found to be an

14   "unfair, unlawful, or fraudulent" business act or practice with respect to some class members, but

15   not others.

16           210.    Common questions of law and fact predominate over any questions affecting only

17   individual members of the proposed class.  These common legal and factual questions arise from

18   certain central issues which do not vary from class member to class member, and which may be

19   determined without reference to the individual circumstances of any particular class member.

20   Indeed, each class member's claims arise out of the same conduct by Zynga.  And the core

21   liability question is common: whether Zynga's acts with respect to the Zynga Social Slots Games

22   constitute "unfair," "unlawful," or "fraudulent" business acts under California's Unfair

23   Competition Law.

24           211.    A class action is superior to all other available methods for the fair and efficient

25   adjudication of this litigation because individual litigation of each claim is impractical.  It would

26   be unduly burdensome to have individual litigation of hundreds of thousands of individual

27   claims in separate lawsuits, every one of which would present the issues presented in this

28   lawsuit.

First Amended Class Action Complaint                              Case No. 3:21-cv-01427-LB

**H.**     **The proposed class is ascertainable.**

212.     The proposed class is readily ascertainable.  The precise number and identity of proposed class members can be determined with specificity from Zynga's user records.

<u>Claims</u>

**Count I: Violation of California Unfair Competition Law - Unlawful Prong**

213.     Plaintiffs incorporate by reference the facts alleged above.

214.     California's Unfair Competition Law (the UCL) forbids, in relevant part, any "unlawful, unfair or fraudulent business act or practice."

215.     Zynga engaged in "unlawful" business acts or practices by developing, owning, operating, and controlling illegal slot machines in violation of California Penal Code Sections 330, *et seq.*, as discussed above.

216.     In addition, Zynga also conducted, financed, managed, supervised, directed, and owned an illegal gambling business in violation of the Illegal Gambling Business Act (18 U.S.C. § 1955).  Zynga's conduct in relation to the Zynga Social Slots Games violates the governing law.  Moreover, Zynga's business involves five or more persons who conduct, finance, manage, supervise, or own all or part of such business.  Finally, Zynga's business has been or remains in substantially continuous operation for a period in excess of thirty days and has a gross revenue of $2,000 in any single day.

217.     Additionally, Zynga knowingly accepted payments from Plaintiffs and class members in connection with unlawful Internet gambling in violation of the Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367).  Zynga is engaged in the business of betting or wagering because it is engaged in the business of operating games subject to chance at which Plaintiffs and class members stake or risk things of value upon the understanding that they will receive something of value in the event of a certain outcome.  The Zynga Social Slots Games constitute unlawful Internet gambling because Zynga receives bets or wagers that users place over the Internet.  Moreover, Zynga receives those bets or wagers in California, and Zynga's Social Slots Games are unlawful in California.

218.     Zynga's acts caused harm to Plaintiffs and the class.  By inducing Plaintiffs and

74

the class to purchase coins for use in connection with the Zynga Social Slots Games, Zynga caused financial injury to Plaintiffs and the class.  In addition, Zynga's acts caused Plaintiffs and the class to become addicted to the Zynga Social Slots Games, caused them to spend substantial time on those games, and/or caused them emotional distress and financial troubles.

219.    The harm to Plaintiffs and the class greatly outweighs the public utility of Zynga's conduct.  There is no public utility of Zynga's conduct, which is promoting illegal and addictive gambling.  Moreover, slot machines are illegal in California because the harm they cause to their users outweighs any public utility.  Indeed, the California Supreme Court recently upheld preliminary injunctions under the UCL against the operation of several computer sweepstakes games because those games constituted illegal slot machines under Cal. Penal Code § 330b. [40]

220.    This injury was not outweighed by any countervailing benefits to consumers or competition.  Any entertainment value that gambling may cause is outweighed by the harms identified above.  Moreover, slot machines are illegal in California because the harm they cause to their users outweighs any benefits to consumers or competition.

221.    Zynga's unlawful business practices were a substantial factor and proximate cause in causing losses and damages to Plaintiffs and the class.

222.    Plaintiffs seek all monetary and nonmonetary relief allowed by law, including restitution of all money paid to Zynga in connection with the Zynga Social Slots Games and an injunction prohibiting Zynga from continuing to engage in the unlawful business acts and practices identified above.

**Count II: Violation of California Unfair Competition Law – Unfair Prong**

223.    Plaintiffs incorporate by reference the facts alleged above.

224.    California's Unfair Competition Law (the UCL) forbids, in relevant part, any "unlawful, unfair or fraudulent business act or practice."

---

[40] *See* *People ex rel. Green v. Grewal*, 61 Cal. 4th 544, 189 Cal. Rptr. 3d 686, 352 P.3d 275 (2015).

225.    Zynga developed, owned, operated, controlled, and knowingly accepted payment in connection with illegal slot machines in violation of California Penal Code Sections 330, *et seq.*, the Illegal Gambling Business Act (18 U.S.C. § 1955), and the Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367).

226.    Zynga engaged in "unfair" business acts or practices by preying on users' addictive tendencies, designing its social slots games to be as addicting and time-consuming as possible, targeting individuals with addictive tendencies, and using microtransactions and virtual coins to mask the fact that the user is paying money to play.

227.    This practice violated California's established public policy of prohibiting slot machines and unregulated gambling enterprises, embedded in California's Constitution and statutes. *See, e.g.*, Cal. Const. Art. IV § 19(e); Cal. Pen. Code §§ 330, *et seq.*; Cal Bus. & Prof. Code §§ 19800, *et seq.*

228.    This practice was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  As alleged above, Zynga intentionally preyed on consumers' addictive tendencies and caused them to become addicted to the Zynga Social Slots Games, causing them to spend substantial amounts of money at Zynga's virtual slot machines.

229.    The unfairness of this practice is tethered to a legislatively declared policy.  The California legislature has declared that slot machines and unregulated gambling enterprises are unlawful because they are injurious to the public welfare. *See, e.g.*, Cal. Pen. Code §§ 330, *et seq.*; Cal Bus. & Prof. Code §§ 19800, *et seq.*

230.    Zynga's acts caused harm to Plaintiffs and the class.  By inducing Plaintiffs and the class to purchase coins for use in connection with the Zynga Social Slots Games, Zynga caused financial injury to Plaintiffs and the class.  In addition, Zynga's acts caused Plaintiffs and the class to become addicted to the Zynga Social Slots Games, caused them to spend substantial time on those games, and/or caused them emotional distress and financial troubles.

231.    The harm to Plaintiffs and the class greatly outweighs the public utility of Zynga's conduct.  There is no public utility of Zynga's conduct.  Moreover, slot machines are illegal in California because the harm they cause to their users outweighs any public utility.

76

Indeed, the California Supreme Court recently upheld preliminary injunctions under the UCL against the operation of several computer sweepstakes games because those games constituted illegal slot machines under Cal. Penal Code § 330b. [41]

232.    This injury was not outweighed by any countervailing benefits to consumers or competition.  Any entertainment value that gambling may cause is outweighed by the harms identified above.  Indeed, slot machines are illegal in California because the harm they cause to their users outweighs any benefits to consumers or competition.

233.    Plaintiffs and the class could not have reasonably avoided this injury.  Zynga intentionally designed the Zynga Social Slots Games to addict users and induce them into spending money.  Moreover, Zynga intentionally obscured the unlawful and unfair nature of the Zynga Social Slots Games.

234.    Zynga's unfair business practices were a substantial factor and proximate cause in causing losses and damages to Plaintiffs and the class.

235.    Plaintiffs seek all monetary and nonmonetary relief allowed by law, including restitution of all money paid to Zynga in connection with the Zynga Social Slots Games and an injunction prohibiting Zynga from continuing to engage in the unfair business acts and practices identified above.

**Count III: Violation of California Unfair Competition Law – Fraudulent Prong**

236.    Plaintiffs incorporate by reference the facts alleged above.

237.    California's Unfair Competition Law (the UCL) forbids, in relevant part, any "unlawful, unfair or fraudulent business act or practice."

238.    Zynga developed, owned, operated, controlled, and knowingly accepted payment in connection with illegal slot machines in violation of California Penal Code Sections 330, *et seq.*, the Illegal Gambling Business Act (18 U.S.C. § 1955), and the Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367).

239.    Zynga engaged in "fraudulent" business acts or practices by marketing its social

---

[41] *See* Grewal, *supra*.

slots games as lawful video games, rather than unlawful slot machines.  Additionally, Zynga represented its games as lawful games of skill, rather than unlawful games of chance.  Based on Zynga's marketing and representations, a reasonable consumer would be misled into thinking that the Zynga Social Slots Games were lawful.  Based on Zynga's marketing and representations, Plaintiffs and the class were misled into thinking that the Zynga Social Slots Games were lawful.

240.     Zynga's acts caused harm to Plaintiffs and the class.  By inducing Plaintiffs and the class to purchase coins for use in connection with the Zynga Social Slots Games, Zynga caused financial injury to Plaintiffs and the class.  In addition, Zynga's acts caused Plaintiffs and the class to become addicted to the Zynga Social Slots Games, caused them to spend substantial time on those games, and/or caused them emotional distress and financial troubles.

241.     The harm to Plaintiffs and the class greatly outweighs the public utility of Zynga's conduct.  There is no public utility of Zynga's conduct.  Moreover, slot machines are illegal in California because the harm they cause to their users outweighs any public utility. Indeed, the California Supreme Court recently upheld preliminary injunctions under the UCL against the operation of several computer sweepstakes games because those games constituted illegal slot machines under Cal. Penal Code § 330b. [42]

242.     This injury was not outweighed by any countervailing benefits to consumers or competition.  Any entertainment value that gambling may cause is outweighed by the harms identified above.  Indeed, slot machines are illegal in California because the harm they cause to their users outweighs any benefits to consumers or competition.

243.     Zynga's fraudulent business practices were a substantial factor and proximate cause in causing losses and damages to Plaintiffs and the class.

244.     Plaintiffs seek all monetary and nonmonetary relief allowed by law, including restitution of all money paid to Zynga in connection with the Zynga Social Slots Games and an injunction prohibiting Zynga from continuing to engage in the fraudulent business acts and

---

[42] *See* Grewal, *supra*.

1   practices identified above.

2   <u>**Prayer for Relief**</u>

3   Plaintiffs seek the following relief for themselves and for the proposed class:

4   a) an order certifying the asserted claims, or issues raised, as a class action;

5   b) a judgment in favor of Plaintiffs and the proposed class;

6   c) damages;

7   d) restitution;

8   e) disgorgement, and other just equitable relief;

9   f) pre- and post-judgment interest;

10  g) an injunction as allowed by law;

11  h) reasonable attorneys' fees and costs, as allowed by law;

12  i) any additional relief that the Court deems reasonable and just.

13  <u>**Jury Demand**</u>

14  Plaintiffs demand a jury trial on all issues so triable.

15

16  Dated: March 29, 2021                    Respectfully submitted,

17                                           By: */s/ Gabriel Z. Doble*

18
                                            Gabriel Z. Doble (Cal. Bar No. 335335)
19                                          gabe@dovel.com
                                            Simon Franzini (Cal. Bar No. 287631)
20                                          simon@dovel.com
                                            Gregory S. Dovel (Cal. Bar No. 135387)
21                                          greg@dovel.com
                                            Jonas B. Jacobson (Cal. Bar No. 269912)
22                                          jonas@dovel.com
                                            Julien A. Adams (Cal. Bar No. 156135)
23                                          julien@dovel.com
24                                          DOVEL & LUNER, LLP
                                            201 Santa Monica Blvd., Suite 600
25                                          Santa Monica, California 90401
                                            Telephone: (310) 656-7066
26                                          Facsimile: (310) 656-7069
27

28                                          *Attorneys for Plaintiffs Michael Owens,*

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Jennie Plumley, Jon Schweitzer,*
*Charlie Finlay, Melissa Irelan,*
*and the putative Class*

First Amended Class Action Complaint                    Case No. 3:21-cv-01427-LB